**In re Gloria J. TAYLOR, Debtor.**

**Gloria J. TAYLOR, Plaintiff,**

v.

**INDUSTRIAL VALLEY BANK, Defendant.**

**Bankruptcy No. 79–02088G.
Adv. No. 80–0274G.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Jan. 29, 1981.

Mitchell W. Miller, The Bankruptcy Clinic, Inc., Philadelphia, Pa., for plaintiff/debtor.

Kenneth F. Carobus, Asst. Corporate Counsel, Philadelphia, Pa., for defendant, Industrial Valley Bank.

Margaret Graham, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether a transfer of eight hundred dollars prior to bankruptcy by the debtor to a creditor is avoidable by the debtor pursuant to §§ 522(h) and 547(b) of the Bankruptcy Code. We conclude that the debtor has established all the elements required to avoid the transfer.

The facts of the instant case are as follows:[1] On October 17, 1978, Gloria J. Taylor ("the debtor") borrowed the sum of $2,900.00 from the Industrial Valley Bank ("IVB") and granted IVB a security interest in her automobile. The debtors used the loan to extinguish a prior loan and to pay various bills and in December, 1978, the debtor made one loan repayment of $115.29. In January, 1979, the debtor was involved in an accident in which the automobile was destroyed. Although the security agreement executed in connection with the loan provided that she would not sell the collat-

eral without the prior written consent of IVB, the debtor sold the vehicle to a junkyard for $25.00 without notifying IVB thereof.

Eventually, when the debtor failed to make further loan payments, IVB sought the assistance of a collection agency and, beginning in mid-September, the president of the agency, Robert Longley ("Longley") made repeated phone calls to the debtor, both at home and at work, stating that he was from IVB. On October 3, he phoned the debtor at work, and persuaded her to meet with him in his car, which was parked outside the debtor's place of employment. At that meeting, the debtor states that Longley threatened to take away her home by an execution and sheriff's sale. The debtor then admitted that she had a savings account containing $1,000 and agreed to give Longley $800.00 to prevent the sale of her home. The debtor went with Longley to her home where she got her bank book. They proceeded to the bank, where the debtor withdrew $800.00 and gave it to Longley.

On November 8, 1979, the debtor filed a voluntary petition under chapter 13 of the Code and, on June 6, 1980, filed the instant complaint to recover an involuntary transfer of exempt property. In addition to the return of the $800.00, the debtor seeks attorney's fees and damages of $25.00 for every day that the creditor retains the transferred money.

The legal issue presented is whether the debtor may avoid the $800.00 transfer under the provisions of §§ 522(h) and 547(b) of the Code. Section 522(h) provides, in part, that

> The debtor may avoid a transfer of property of the debtor . . . to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer; if—(1) such transfer is avoidable . . . under section . . . 547 . . . , and

[1]. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

(2) the trustee does not attempt to avoid such transfer.

Subsection (g)(1) of § 522 allows a debtor to exempt property that, but for the transfer, could have been exempted provided that the transfer was not voluntary. Thus, in the case at bench, if the trustee could have avoided the transfer of the $800.00 under § 547, but did not attempt to do so, and the transferred property may be exempted by the debtor under § 522 and the transfer was not voluntary, the debtor may avoid that transfer.

Section 547(b) provides for the avoidance of a transfer of the debtor's property when five elements are established: (1) the transfer was to or for the benefit of a creditor, (2) the transfer was on account of an antecedent debt, (3) the transfer was made while the debtor was insolvent, (4) the transfer was made within 90 days of the filing of the petition, and (5) the transfer enables the creditor to get preferential treatment (i. e., to receive more than it would receive from the debtor in a chapter 7 case).

■ In its answer to the complaint, IVB admits four of these five elements. The creditor contends, however, that the fifth element, preferential treatment, is not present here. We find this argument unpersuasive and conclude that the creditor has received preferential treatment here, within the meaning of § 547(b)(5). That subsection "requires a comparison between what the creditor actually received and what the creditor would have received in a chapter 7 liquidation but for the transfer." 4 Collier on Bankruptcy ¶ 547.35 at 547–107 (15th ed. 1980). In making a comparison, we must first determine what IVB's class would be in a chapter 7 case and then determine what distribution it would have received as a member of that class, absent the transfer. *Id.* at 547–108. IVB contends that, despite the destruction of its collateral in the automobile collision, the

bank remained a secured creditor and would have received the $800.00 whether or not the transfer occurred. This argument is without merit. Once the car was destroyed, IVB lost its security and its debt was unsecured.[2] Since the debtor has claimed all of her assets as exempt property, her unsecured creditors would receive nothing in a chapter 7 liquidation. Thus, the $800.00 transfer enabled IVB to receive more than the other members of its class.

■ IVB's second argument is equally unconvincing. Apparently relying on Congressional silence, IVB concludes that cash is not exemptable property under § 522(d). The debtor, however, has cited authority which indicates that, to the extent that the $7,500.00 aggregate exemption is not exhausted, cash may be exempted under § 522(d)(5).[3] That section provides that the debtor may take his exemption in "*any* property." We have held previously that that language is broad enough to permit a debtor to claim cash as exempt property. *See In re Laird*, 6 B.R. 273, 276 (E.D.Pa. 1980) and cases cited therein. We conclude that if Congress had intended to exclude cash from property which a debtor may claim as exempt, it would have done so by express verbiage. Absent that express language, common sense dictates that the phrase "any property" includes cash.

■ Finally, IVB argues that the $800.00 at issue cannot be exempted under § 522(g) because the transfer was not an involuntary transfer. IVB contends that a payment made because of a threat or under moral compulsion is not an involuntary transfer within the meaning of § 522(g). Instead, IVB defines an involuntary transfer as one which the debtor cannot stop, such as a transfer by action of law. We deduce that this construction of "involuntary" is too narrow. While the legislative history of this subsection is silent on this issue, Black's Law Dictionary defines a voluntary payment as "[a] payment made by a debtor of

---

**2.** Although the creditor would be unsecured, it might be able to prove that the debt owing to him was a nondischargeable one. *Cf. In re Culbreath*, No. 79–979 (E.D.Pa., Oct. 28, 1980). In that case, the creditor would still receive the same as other creditors in its class in the bankruptcy case but would also be able to pursue the debtor for repayment after the debtor was discharged.

**3.** *See*, ALI–ABA Resource Materials, *The New Federal Bankruptcy Code* at 205.

his own will and choice, as distinguished from one exacted from him by process of execution or other compulsion." Black's Law Dictionary 1017 (5th ed. 1979). We conclude therefore that, on the facts of this case, the harassment of the debtor over several weeks resulted in a payment "exacted ... by ... compulsion." *Id.* The testimony of the debtor clearly shows that she did not make this payment of [her] own will and choice." *Id.* Having rejected all of IVB's arguments, we hold that the debtor may avoid this transfer under §§ 522(h) and 547(b) of the Code.

While the debtor also seeks damages in the amount of $25.00 for each day IVB retains the $800.00, as well as attorney's fees, she has cited no authority to support either of these requests and we are aware of no authority providing for a damages award, essentially punitive in nature, in a case as the case *sub judice.* Moreover, as to attorney's fees, the "American Rule" holds that, absent bad faith on the part of the defendant, and barring statutory authority, no such award should be made. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141. We therefore reject both of these requests.