In re Christine HUDSON, Debtor.

**ILLINOIS DEPARTMENT OF PUBLIC AID, Plaintiff,**

v.

**Christine HUDSON, Defendant.**

**In re Mary McQUITTER, Debtor.**

**ILLINOIS DEPARTMENT OF PUBLIC AID, Plaintiff,**

v.

**Mary McQUITTER, Defendant.**

**Bankruptcy Nos. 80 B 07980, 80 A 1372, 80 B 08573 and 80 A 1492.**

United States Bankruptcy Court, N. D. Illinois, E. D.

March 2, 1981.

Kornfeld & Spitz, Chicago, Ill., for Christine Hudson.

Peter F. Geraci, Chicago, Ill., for Mary McQuitter.

Tyrone C. Fahner, Atty. Gen., State of Ill., Chicago, Ill., for Illinois Dept. of Public Aid.

## OPINION AND ORDER

RICHARD L. MERRICK, Bankruptcy Judge.

The above-styled cases were consolidated for trial because they involve the same plaintiff and the same legal issues. Each cause came on to be heard on the complaint of the Illinois Department of Public Aid (hereinafter "the State") to determine dischargeability of debt.

In each case the debtor received more in public assistance payments from the State than was due to her because she failed to report all income from her employment. Each debtor had an affirmative duty to report such income. 1 Ill.Rev.Stat. ch. 23, § 11–18 (1979). Debtor Christine Hudson (hereinafter "Hudson") was overpaid $2,443.13 because of her failure to report this income. Judgment was entered against her by a state court for $4,886.26. Debtor Mary McQuitter (hereinafter "McQuitter") was overpaid $2,143.04; she later admitted the debt and signed a promissory note to the State for the amount of the overpayment. Subsequently, each debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. Hudson proposed a plan that provided for 20% repayment to unsecured creditors, while McQuitter's plan gave 10% to unsecured creditors. There were no objections to confirmation in either case; Hudson's plan was confirmed August 5, 1980, and McQuitter's was confirmed August 26, 1980.

## CONCLUSIONS OF LAW

The State has brought complaints against Hudson and McQuitter to determine dischargeability of debt under sections 523(a)(2) and 523(a)(7) of the Bankruptcy Code. Section 523(a)(2) excepts from discharge any debts for obtaining money, property, or services by false pretenses or false representation. 11 U.S.C. § 523(a)(2) (Supp. II 1978).

█ Provisions in Chapter 5 of the Code apply to Chapter 13 unless superseded by sections within Chapter 13. *See* 11 U.S.C. § 103(a) (Supp. II 1978). Section 1328 specifies only three types of debts that are not dischargeable upon successful completion of a Chapter 13 plan: (1) allowed claims not provided by the plan, (2) certain long-term obligations specifically provided for by the plan but which extend beyond the termination of the plan, and (3) claims for alimony and child support. 11 U.S.C. 1328(a) (Supp. II 1978). A Chapter 13 discharge is subject to the exceptions in section 523 only if the debtor fails to complete the payments required by the plan. 11 U.S.C. § 1328(c)(2) (Supp. II 1978). *See* 3 Collier on Bankruptcy ¶ 523.03 (15th ed. 1980); 5 Collier on Bankruptcy ¶ 1328.01 (15th ed. 1980).

Nevertheless, the State seeks to have its debts in these cases determined to be nondischargeable even though the statute says that such debts are discharged upon successful completion of a Chapter 13 plan. The State contends that under Chapter 13 an unsecured creditor must be treated "at least as fairly" as he would be under a Chapter 7 liquidation. Since an unsecured creditor with a non-dischargeable debt has the possibility (no matter how remote) of collecting a larger part of its debt under Chapter 7 than under Chapter 13, the creditor is not being treated "as fairly" under Chapter 13, according to the State's theory.

The brief of the State asserts repeatedly that it would be illogical to assume that Congress had intended that fraudulent debts might be discharged by partial payment through a Chapter 13 plan. The illogic is to assume that Congress intended anything with respect either to exemptions or dischargeability. An abnormal number of compromises were involved in shaping a bill which could be passed by both Houses of Congress. The House and Senate Bills did not go through the customary series of subcommittee reports, committee reports, and votes at various levels of the legislative process so that it is more difficult than usual to attribute any given position to any given legislator, much less to assert that there was a consensus among the legislators on a particular matter. Nevertheless, it is fashionable to speak of the intent of Congress, and this Court is more persuaded by the reasoning of *In re Keckler*,[1]

"Congress surely was aware that Chapter 13 would make certain persons eligible for discharge of certain debts that would be nondischargeable debts under Chapter 7."

than of the State.

The legislative history has been considered with scholarship and insight on several occasions[2] and, with the exception of two decisions of Judge Pusateri (*In re McMinn*, 4 B.R. 150, 1 CBC 2d 1007 (Bkrtcy. D.Kan.1980), *In re Chaffin*, 4 B.R. 324, 2 CBC 2d 229 (Bkrtcy.D.Kan.1980), the other Bankruptcy Judges approach the issue in the same manner as does this Court. It might be that Judge Pusateri would follow the same approach if his two decisions had

---

1. CBC 2d 574, 579, 3 B.R. 155 (Bkrtcy.N.D.Ohio 1980).

2. *In re Hurd*, 4 B.R. 551, 2 CBC 2d 190 (Bkrtcy. W.D.Mich.1980);
*In re Jenkins*, 4 B.R. 278, 2 CBC 2d 129 (Bkrtcy.D.Colo.1980)
*In re Cole*, 3 B.R. 346, 1 CBC 2d 795 (Bkrtcy. S.D.W.Va.1980);
*In re Marlow*, 3 B.R. 305, 1 CBC 2d 705 (Bkrtcy.N.D.Ill.1980).

Lee: Chapter 13, nee Chapter XIII, 53 Am. Bank L.J. 303, Fall, 1979.
Of the persons who have written about the legislative background of substantive issues under the Bankruptcy Reform Act of 1978, Judge Lee is the best informed because he was a direct participant in all stages of the drafting process.

dealt with more meaningful payments. One of them was a one per cent plan, and the other was a zero per cent plan. His reasoning was that the non-dischargeable claim in a Chapter 7 was greater than nothing in a Chapter 13 plan in one case, and that a $44,000 non-dischargeable claim in a Chapter 7 plan was greater than a $440 payment in a Chapter 13 plan in the other case. In effect, the result which Judge Pusateri reached, by taking a different route, was the same that this Court would have reached. This Court does not countenance Chapter 13 plans in which the unsecured creditors are scheduled to receive less than 10%. As a consequence, low payment plans are not confirmed, and the creditors allegedly defrauded are free to pursue their normal remedies, in the same manner as they may do if the plan of confirmation fails because of non-compliance with § 1325(a)(4).

Because composition plans under Chapter XIII of the former Bankruptcy Act usually contemplated payment of a significant portion of unsecured debt, and 100% extension plans were more common than composition plans, it may well have been the view of many of the legislators that if a debtor made his best effort and paid off all that he could, the debtor should be forgiven his past mistakes, moral and ethical as well as financial. Whether that was their reasoning or not, the legislators did not require that a Chapter 13 plan be a high payment plan in order to qualify the debtor for relief against the debts due to his creditors generally, which was considerably broader than the relief which would have been received by the debtor under present Chapter 7, or old Chapters I–VII, or XIII. In the two cases which have been consolidated here for argument and decision the plans provided for periodic payments aggregating, respectively, 20% and 10% to unsecured creditors.

Believing as we do that the provisions respecting dischargeability under Chapter 13 were intentional and not inadvertent, it is not necessary, and, in fact, might be impertinent, for this Court to express views as to whether the breadth of the discharge is sound, practical or wise. It exists, and it must be respected.

■ The State's brief characterizes as an issue of fairness § 1325(a)(4) of the Code:

"The value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;"

(11 U.S.C. § 1325(a)(4)).

This Court always has construed that subsection as being a simple arithmetic comparison measured in dollars between the future equivalent of the present value of the payments to be received under Chapter 13 with a theoretical present cash distribution upon liquidation under Chapter 7. The use of the words "cash" and "paid" strongly suggests that the comparison intended is of liquidated amounts, that of Chapter 7 being a present cash payment and that of Chapter 13 being the present discounted value of future cash payments. The subsection is intended to be an objective minimum and not a subjective standard, such as "best effort" or "good faith."

■ In the cases presently before the Court the State has a judgment against Mrs. Hudson of $4,886, which under a 20% plan would produce total cash payments of $977, which, discounted at 10%, produces a present value of $729. The State's note against Mrs. McQuitter of $2,143 would produce payments of $214 on a 10% plan, which discounted at 10%, produces a present value of $160. This Court understands § 1325(a)(4) to mean that the Hudson plan may be confirmed if the liquidation amount which the State would receive under a Chapter 7 proceeding would be $729, or less; and that the McQuitter plan may be confirmed if the liquidation amount to be received by the State would be $160, or less. (For purposes of simplification, the examples given are the amounts required if the State were the only unsecured creditor). In fact because the allowable exemptions of both debtors exceed their respective assets, there would be no money distributed to

unsecured creditors under Chapter 7 plans of either debtor.

The State appears to be advancing a theory which demonstrates imaginative thinking and has been urged elsewhere. The idea is that a non-dischargeable debt has a value because of the fact of its non-dischargeability. Thus in a Chapter 7 plan the State would receive no cash distribution under either the Hudson or the McQuitter plan. In one case it would receive a non-dischargeable judgment of $4,886 and in the other a non-dischargeable judgment of $2,143. If in the respective cases the State under Chapter 7 plans were to receive cash distributions of $729 and $160, plus a non-dischargeable judgment, the argument might be stronger that such distribution would be greater than the time weighted value of $729 and $160 alone, and that consequently the plan did not meet the requirement of § 1325(a)(4). The difficulty with the argument if the Chapter 7 liquidation in cash is less than the present value of the Chapter 13 planned distribution is that there is no feasible method of placing a value on a non-dischargeable debt. Although there are speculators who deal in future interest in land and in trusts, this Court is not aware of any market through which non-dischargeable debts might be liquidated or appraised. In the instant cases no evidence was offered. It may be that the State would have a better collection record than would a private debt collector because the latter always would be considering the cost/benefit ratio whereas the State would be using salaried employees and would be anxious to establish examples of determined pursuit in order that it might discourage future delinquencies.

At the present juncture there is no way of determining whether a non-dischargeable claim of $4,886 would be worth more, less, or the same as an extended payment of $977 from Mrs. Hudson, or a present payment of $729; similarly whether a non-dischargeable claim of $2,143 against Mrs. McQuitter would be worth more, less, or the same as an extended payment of $214, or a present payment of $160. The schedules filed by the respective debtors as a part of their respective petitions make out prima facie cases that unsecured creditors will receive more under the proposed Chapter 13 plans than they would under Chapter 7 liquidation plans. The State has done nothing to rebut that presumption other than to present a theory.

■ The brief of the State verges on saying that no criminal proceedings will be brought against a welfare fraud debtor if the State obtains a non-dischargeability judgment in a Chapter 7 proceeding, but that criminal proceedings may be instituted if the debt is discharged under Chapter 13. If that should be the basis for any decision by the State as to whether or not it should prosecute, certainly the prosecution would be enjoined as in violation of the supreme powers of the United States respecting the rights of bankrupts. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). The argument seems rather far-fetched that Congress would not have intended fraud debts to be dischargeable under Chapter 13 because the incarceration of the defrauding debtor would make it impossible for him to maintain his payments under a Chapter 13 plan, or that he would not be "an individual with regular income."

The Court can take judicial notice of the fact that there are many powerful interests within the country that believe that Congress went too far in many areas of the Bankruptcy Code, but particularly with respect to the breadth of discharges under Chapter 13 and the lack of a minimum percentage of payment under Chapter 13 plans. Undoubtedly Congress will be looking at those problem areas during its ensuing sessions, but until it acts all that the Courts can do is to deal with the existing legislation.

■ Finally, the debts to the State will be discharged only if the plan as confirmed is completed. If the plan is not completed,

(a) in the event of dismissal, the State may proceed by regular civil process to collect on the debt;

(b) in the event of a conversion to Chapter 7, the State may present its case of non-dischargeability and if successful, follow normal civil process; or

(c) in the event of a hardship. discharge, the situation respecting fraud debts is the same as under Chapter 7 discharges, (See §§ 1328(c) and 523(a) except that the creditor does not have to obtain a determination of non-dischargeability by the Bankruptcy Court before undertaking conventional collection process.

For better or for worse, Congress provided that in a Chapter 13 plan which is completed, under § 1328(a), all debts will be discharged except for the alimony and support debts described in § 523(a)(5) and long term debts described in § 1322(b)(5). *In re Seely*, 6 B.R. 309 (Bkrtcy.1980).

There is no provision in the Bankruptcy Code to contest the dischargeability of a debt under § 523 during the time that a Chapter 13 plan is pending after confirmation. *In re Lewis*, 5 B.R. 575 (Bkrtcy.1980). At the moment the State's complaints respecting the discharge of the welfare fraud debts are premature.

The complaints will be dismissed with prejudice toward refiling during such time as the plans are pending and permanently if the plans are completed according to their terms.