In re Lorraine
JOHNSON–ALLEN, Debtor.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, Plaintiff,

v.

Lorraine JOHNSON–ALLEN,
Defendant.

In re Ruby STEFFLER a/k/a Ingrid J.
Steffler, Debtor.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, Plaintiff,

v.

Ruby STEFFLER a/k/a Ingrid J.
Steffler, Defendant.

Bankruptcy Nos. 86–01239K, 86–00205K.
Adversary Nos. 86–0463K, 86–0464K.

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 23, 1987.

Andrew A. Coates, Dept. of Public Welfare, Office of Fraud and Abuse Investigation and Recovery, Philadelphia, Pa., for plaintiff.

Gary Klein, Philadelphia, Pa., for defendant Lorraine Johnson-Allen.

David A. Searles, Philadelphia, Pa., for defendant Ruby Steffler a/k/a Ingrid J. Steffler.

James J. O'Connell, Philadelphia, Pa., Chapter 13 Standing Trustee.

Peter Berson, District Attorney's Office, Government Frauds Unit, Philadelphia, Pa.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

These consolidated adversarial proceedings present the issues of whether the liability of a Chapter 13 debtor to pay criminal restitution constitutes a "claim" dischargeable in the Chapter 13 case; and, assuming that the restitution obligation is a dischargeable claim, what remedies are available to the debtor to prevent collection of future payments and to recover post-petition payments made. We hold that a criminal restitution obligation *does* constitute a dischargeable "claim" and that the appropriate remedy is to direct the recipient of the restitution to remit all post-petition sums collected to the Trustee and to prevent the recipient from retaining future restitution remittances, but not, unless such directives are ignored, to enjoin any state proceedings or parties or to declare the restitution recipient to be in contempt of court.

These adversarial proceedings were filed separately by the Plaintiff, Commonwealth of Pennsylvania, Department of Public Welfare (hereinafter referred to as "DPW"), against each of the Debtors, Lorraine Johnson-Allen [1] and Ruby Steffler, a/k/a Ingrid J. Steffler, on May 19, 1986. Each of the Complaints, which are prepared in identical form, aver that the Debtors pleaded guilty to several counts of prepetition welfare fraud and were ordered to make restitution payments to the County Probation Department on behalf of DPW. The relief sought in each Complaint was a declaration that the respective Debtors' restitution obligations were non-dischargeable, on three (3) separate grounds: (1) They were within the scope of 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6), and/or (a)(7); (2) The "claim" of the DPW was not a "debt;" and (3) DPW "is immune from suit and this court is foreclosed from discharging" DPW's "claim" by the Eleventh Amendment to the federal Constitution.

---

1. Our review of the file indicates that this Debtor utilizes a hyphenated last name and we shall therefore correct the caption to so indicate.

Steffler filed an Answer and Counterclaims on July 18, 1986, and Johnson-Allen filed an Answer on June 30, 1986, and thereafter, on August 26, 1986, an Amended Answer and Counterclaims, the latter of which virtually identical to that filed by Steffler. In these pleadings, the Debtors averred that, since the filing of their Petitions on January 14, 1986, and March 14, 1986, respectively, they had made payments on the restitution obligations and they therefore sought damages against DPW for violation of the automatic stay imposed by 11 U.S.C. § 362 and sought to avoid the postpetition transfers to DPW per 11 U.S.C. §§ 549, 522(h), and 522(g)(1).

The matters were listed for trial before us on September 9, 1986, and were continued to October 9, 1986. Only Counsel for the Debtors appeared on the latter date, and indicated that they were not prepared to try the case that day, but believed that the matters raised exclusively legal issues which could be resolved on cross-motions for summary judgment.

We therefore entered an Order on October 14, 1986, consolidating the adversarial matters for all purposes; directing the Debtors to either prepare a Stipulation of Facts or a Motion for Summary Judgment and file same with a Brief on or before November 10, 1986; and directing DPW to file any materials in response to the Debtors' filing on or before December 12, 1986.

On November 10, 1986, the Debtors opted to file a Motion for Summary Judgment, accompanied by their personal Unsworn Declarations. Coincidentally, two (2) days later, the United States Supreme Court filed one of the initial Opinions of the term, *Kelly v. Robinson*, —— U.S. ——, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), which reversed the Debtors' principal supporting authority, *In re Robinson*, 776 F.2d 30 (2d Cir.1985). Therefore, we issued an Order according the Debtors an opportunity to address the pertinence of *Kelly v. Robinson* in a Supplemental Brief to be filed on or before November 28, 1986, and holding the December 12, 1986, date as the deadline for DPW's reply. On November 20, 1986, the Debtors directed a letter to the Court addressing the impact of the Supreme Court's decision in lieu of a Supplemental Brief.

On December 12, 1986, DPW opted to file a Cross-Motion for Summary Judgment, attaching thereto an Unsworn Declaration of Mary B. Sieverling, Assistant Counsel for DPW.

The parties, by their Cross-Motions for Summary Judgment, indicate agreement that there are no genuine issues of material fact to be resolved in the disposition of these cases, and the Court also agrees that this matter is appropriate for disposition in this procedural manner per Bankruptcy Rule 7056 and Federal Rule of Civil Procedure 56. This Court therefore need not and will not make separate Findings of Fact, but shall herein fill out the record by reference to uncontested averments in the respective Unsworn Declarations accompanying the Cross-Motions for Summary Judgment.

On June 18, 1985, JOHNSON–ALLEN pleaded guilty to four (4) counts of welfare fraud for receiving $6,300.00 in unauthorized benefits between April 11, 1980, and October 30, 1982. The sentence of the said Debtor was probation and repayment of the $6,300.00 in payments of $10.00 monthly from July, 1985, to December, 1985, and $20.00 monthly thereafter. The said Debtor made all of these payments through her filing date. Shortly thereafter, both she personally and her counsel, by letter, advised DPW and the County Probation Department of her bankruptcy filing and indicated that they believed that the bankruptcy stayed collection of the restitution obligation, which would be covered by her Chapter 13 Plan and hence ultimately discharged in these proceedings upon completion of her Plan payments. Upon advice from the Probation Department that it did not accept the reasoning of her or her Counsel and advice that she would "get in trouble" if she ceased making payments, the said Debtor, upon advice of Counsel, resumed payments pending disposition of this proceeding.

The facts of Steffler's matter are similar, and are hence recited only when divurgent from the facts relating to Johnson-Allen. On January 17, 1984, Steffler pleaded guilty to welfare fraud which occurred between June 8, 1979, and June 11, 1981. The said Debtor was similarly placed on probation and ordered to make restitution in the amount of $5,506.64 at the rate of $20.00 monthly, probably commencing in early 1984. It should be noted that Steffler listed DPW as a creditor in the amount of $18,000.00 and that DPW filed a Proof of Claim in this amount, indicating that she probably had received sums in addition to those ordered to be repaid in her sentence of restitution. The said Debtor and her Counsel, by certified letter, indicated to the County Probation Department, shortly after the filing, that Steffler would cease payments because of her intention to deal with this obligation in her Chapter 13 Plan. Despite subsequent correspondence from Counsel citing the decision in *In re Robinson*, the County District Attorney scheduled a probation violation hearing for the said Debtor. At this point, upon advice of Counsel, Steffler resumed her payments.

The starting point of our discussion is that section of the Bankruptcy Code setting forth the scope of debts covered by a Chapter 13 discharge, which is as follows:

§ 1328. Discharge

(a) As soon as practicable after completion by the debtor of all payments under the Plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor *a discharge of all debts* provided for by the plan or disallowed under section 502 of this title, *except* any debt—

(1) provided for under section 1322(b)(5) of this title; or

(2) of the kind specified in section 523(a)(5) of this title. (emphasis added)

This provision, pertinent to Chapter 13 discharges, can be contrasted with the exceptions to discharge cited in 11 U.S.C. § 523(a), pertinent to discharges pursuant to Chapter 7 and 11, and Chapter 13 "hardship" discharges pursuant to 11 U.S.C. § 1328(b). Among the exceptions cited in 11 U.S.C. § 523(a) is, in 11 U.S.C. § 523(a)(7), an exception for "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit," including certain tax liabilities.

In *Kelly v. Robinson*, the Supreme Court resolved a previous split among court decisions, the most prominent of which was the Second Circuit Court of Appeals decision to the contrary, which it reversed, as to whether 11 U.S.C. § 523(a)(7) prevented discharge of restitution imposed in connection with a state criminal sentence in a Chapter 7 bankruptcy case. However, albeit with certain language which is not comforting to the position of the Debtors here, the Court, apparently intentionally, left open the question as to whether such restitution is a "debt" (and it, might be added, fines or court costs imposed on criminal defendants as well), and hence whether such obligations are dischargeable in a Chapter 13 bankruptcy case.

It is clear to us that, except for the issue of whether charges imposed in a criminal case are a "debt" and whether, concomitantly, the state prosecutorial bodies and/or the victims of crimes who are designated as recipients of restitution have a "claim" against the criminal defendants, the contentions of DPW set forth herein can be dismissed summarily.

■ The first contention, that the restitution obligation of the Defendants is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6), or (a)(7), as DPW apparently concedes in its Brief, has no merit, because these provisions apply only to Chapter 7 cases, and the instant cases are maintained pursuant to Chapter 13. This principle, if not clear from a reading of the Code itself, is emphasized in such cases as *In re DeSimone*, 25 B.R. 728, 729 (E.D.Pa.1982), where our district court, in a bankruptcy appeal, states that

debts under [another section of 11 U.S.C. § 523(a)] are not included in the list of

debts which are not dischargeable under 11 U.S.C. § 1328(a). The law is clear … that debts which fall within the scope of [§ 523(a) ] may still be discharged pursuant to 11 U.S.C. § 1328(a).

This principle is also enunciated, specifically as to 11 U.S.C. § 523(a)(7), by Judge Goldhaber in his recent decision in *In re Smith*, 58 B.R. 78, 80–81 (Bankr.E.D.Pa. 1986), *rev'd on other grounds*, 66 B.R. 244 (E.D.Pa.1986), as follows:

> The dischargeability in bankruptcy of an individual's debts is determined, in part, by reference to 11 U.S.C. § 523. The discharge of an individual in chapter 7 or 11 is limited by the ten subsections of § 523(a), 11 U.S.C. §§ 727(b) and 1141(d)(2). The discharge in a chapter 13 case discharges a debtor from all debts under 11 U.S.C. § 502 except certain long term debts or debts of the type specified in § 523(a)(5) (alimony, maintenance or child support). 11 U.S.C. § 1328(a). A criminal fine, such as one issued by a traffic court, would be excepted by an individual's chapter 7 or 11 discharge according to 11 U.S.C. § 523(a)(7) while a debtor would be exonerated from paying such a debt under the terms of a chapter 13 discharge.

Cases consistent with this result include the following: *In re Sturgeon*, 51 B.R. 82 (Bankr.S.D.Ind.1985) (liability incurred by debtor while motorist intoxicated by alcohol, excepted by 11 U.S.C. § 523(a)(9)); *In re Richards*, 50 B.R. 339 (Bankr.D.D.C. 1985) (federal income tax liability); *In re Young*, 10 B.R. 17 (Bankr.S.D.Cal.1980) (traffic fines); and *In re Hudson*, 9 B.R. 363 (Bankr.N.D.Ill.1981) (welfare fraud claims).

There are, moreover, important logical reasons for treating debtors in cases maintained under Chapter 13 differently from those in cases maintained under Chapter 7 which are relevant to our disposition here. In a Chapter 13 case, the debtor is obliged to make periodic payments to a Trustee, who will distribute the funds received to all creditors who file allowed Proofs of Claim. *See* 11 U.S.C. § 1322(a). The Plan must, *inter alia*, be proposed good faith, *see* 11 U.S.C. § 1325(a)(3),[2] and, upon the objection of either the Trustee or an unsecured creditor, the Plan must provide "that all of the debtor's projected income in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan," 11 U.S.C. § 1325(b)(1)(B). Further, the trustee or any unsecured creditor can move to increase the payments if the financial circumstances of a debtor change for the better during the course of the plan period. 11 U.S.C. § 1329(a). Moreover, any creditor has a right to attend the Meeting of Creditors, interrogate the Debtor, and file Objections to the Plan if the creditor believes that it is not in compliance with the Code in any way. Thus, prosecuting authorities, as well as recipients of restitution orders, both of whom should be listed as creditors by the careful debtor, would have an opportunity to contest, *inter alia*, the debtor's ability to pay a larger percentage of his or her income towards the claim than proposed under a plan. Therefore, it is logical for the Code to provide, as it does, that consideration of whether a debt would be nondischargeable in a Chapter 7 case, per 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6), or (a)(7), is entirely irrelevant to the determination of whether an obligation is dischargeable in a Chapter 13 case. *See In re Ellis*, 66 B.R. 821 (Bankr.N.D.Ill.1986).

The third ground invoked by DPW as a basis for its position that the Defendants' obligation is nondischargeable, *i.e.*, the Eleventh Amendment, can similarly be disposed of summarily. As the Court of Appeals recently held in *In re Vasquez*, 788 F.2d 130, 132 (3d Cir.1986), the Bankruptcy Code, at 11 U.S.C. § 106(c), which has been the subject of "broad interpretation," contains a waiver of sovereign immunity. *See also Gardner v. Pennsylvania Dep't of*

2. *See In re Gathright*, 67 B.R. 384, 390, 391 (Bankr.E.D.Pa.1986), where we observed that the dishonesty of the Debtor in acquiring a debt and the fact that the debt may be non-dischargeable in a Chapter 7 case are not badges of "bad faith," per 11 U.S.C. § 1325(a)(3).

*Public Welfare,* 685 F.2d 106 (3d Cir.), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982). As the Court points out in *Vasquez,* in other instances, the courts have not been shy about discharging obligations to repay government benefits which debtors were overpaid. *See Lee v. Schweiker,* 739 F.2d 870 (3d Cir.1984).[3]

We therefore turn to the difficult issue presented by this case, *i.e.,* whether the restitution obligations of the Debtors to DPW constitute "claims." We note that, prior to the decision of the Supreme Court in *Kelly v. Robinson,* we could locate no generally-reported Chapter 13 case decision in which a court had held that criminal restitution (or other fines and penalties imposed in a criminal case) were not "claims" and hence not dischargeable. The question is whether the Court's dictum in *Kelly v. Robinson* in which it states that it has "serious doubts whether Congress intended to make criminal penalties 'debts' within the meaning of § 101(4)" of the Bankruptcy Code, 107 S.Ct. at 361, casts a sufficient shadow to overrule all prior decisions and the policy arguments expressed hereinbefore to the contrary. We think not.

We note at the outset that both the Second Circuit Court of Appeals and the Supreme Court devoted far more attention to the issue of whether the restitution claim in issue was a "debt" or "claim" than they did to the ultimately-decisive issue of whether 11 U.S.C. § 523(a)(7) applied to restitution. Nevertheless, the Court refuses to rest its decision on the issue of whether restitution is a "claim," but rather follows the language quoted at 107 S.Ct. 361 above by expressly stating that "we need not address that question in this case, because we hold that § 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." This holding specifically limits the scope of *Kelly v. Robinson* to Chapter 7 cases to which, as is indicated above, § 523(a)(7) exclusively applies. Moreover,

it can scarcely be doubted that the Court was aware that its chosen basis for its ruling did *not* extend the scope of its decision to Chapter 13 cases, as the dissent expressly points out that the Court's approach leaves this issue open. *See* 107 S.Ct. at 366 n. 6.

The Court, in its decision, relied heavily upon precedent under the Bankruptcy Act which held that criminal penalties were not dischargeable in bankruptcy, which it found, by its silence, Congress had implicitly meant to be read into the Code, and by the " 'fundamental policy against federal interference with state criminal prosecution' " arising from *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). *Id.* 107 S.Ct. at 360. *See also In re Davis,* 691 F.2d 176, 179 (3d Cir. 1982).

We do note that the Court's reliance on the principle that the Code reflected an intention to accept the precedent under the Act which established the definition of "debt" is strained. The Code merely states that " 'debt' means liability on a claim." 11 U.S.C. § 101(11). It would seem that the analysis of the definition of a "debt" should then lead to the consideration of the definition of "claim," which appears at 11 U.S.C. § 101(4) as follows:

(4) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

---

3. We would, moreover, be hard-pressed to label the fraud of indigent persons seeking to recover additional benefits to provide necessities to their families, like the Debtors here, as more culpable than any other acts of fraudulent misappropriation by debtors. Nor is the government necessarily a more sympathetic victim than private fraud victims.

In *Ohio v. Kovacs,* 469 U.S. 274, 278–80, 105 S.Ct. 705, 708–09, 83 L.Ed.2d 649 (1985), the Court, by contrast, focuses on the definition of "claim" rather than the term "debt," and recites convincing legislative history for the proposition that Congress, in the Code, drafted a far broader definition than was set forth in the cases interpreting the Act and hence that "Congress desired a broad definition of a 'claim' and knew how to limit the application of a provision ... when it desired to do so." *Id.* at 279, 105 S.Ct. at 708.

Thus, Collier, in describing the Code definition of "claim," states that "[t]he effect of the definition is a significant departure from prior law," and that "[t]he Code defines the term much more broadly" than did the Act. 2 COLLIER ON BANKRUPTCY, § 101.04, at 101–19 (15th ed. 1986). The only limitation from the intention "to give 'claim' the broadest interpretation," which Collier notes in support of the statement of the Court in *Ohio v. Kovacs* that it "knew how to limit the application of a provision when it desired to do so," is the specific exception in § 101(4)(B) as to "an equitable remedy for a breach of performance with respect to which such a breach does *not* give rise to a right to payment." *Id.* at 101–21 (emphasis added).

Another source of Code support for an absence of Congressional intention to exclude all criminal penalties from bankruptcy discharge is, ironically, § 523(a)(7) itself, which excepts from its scope not only sums which are "not compensable for actual pecuniary loss," but also any sum otherwise within the scope of § 523(a)(7) "imposed with respect to a transaction or event that occurred *before three years before the date of the filing of the petition* " (emphasis added).[4] It is difficult to understand what purpose Congress would have served by exempting criminal penalties less than three (3) years old from discharge if it meant to exempt *all* such penalties from discharge.

Although the Briefs of both parties were of very little assistance to the Court in its endeavor to do so, we have researched numerous cases touching upon the issue of the response of courts to arguments and counter-arguments that bankruptcy filings did or did not affect criminal penalties, usually in the context of "bad check" cases. As we noted above, we have discovered a variety of responses from courts in Chapter 7 and Chapter 11 cases, but a uniformity in the reported Chapter 13 cases holding that criminal penalties *were* dischargeable. We do not believe that, in *Kelly v. Robinson,* the Court meant to overrule all of these decisions.

We acknowledge a number of Chapter 7 cases holding that the obligation of a debtor to pay restitution is not a "debt." Most notable is *In re Oslager,* 46 B.R. 58 (Bankr. M.D.Pa.1985), which, because it involves a debtor convicted of welfare fraud in this Commonwealth, like the Debtors here, demands a subsequent extended discussion. Other cases reaching a similar conclusion are *In re Vik,* 45 B.R. 64 (Bankr.N.D.Iowa 1984); *In re Pellegrino,* 42 B.R. 129 (Bankr.D.Conn.1984); *In re Mead,* 41 B.R. 838 (Bankr.D.Conn.1984); *In re Magnifico,* 21 B.R. 800 (Bankr.D.Ariz.1982); and *In re Button,* 8 B.R. 692 (Bankr.W.D.N.Y.1981). Interestingly, all of these cases rely exclusively on the issue which the Supreme Court, in *Kelly v. Robinson,* indicated that it need *not* decide, *i.e.,* whether the criminal penalties were a "debt," and, of these cases, only *Pellegrino* relies, even in the alternative, on the conclusion that 11 U.S.C. § 523(a)(7) prevents the discharge of a debtor's restitution obligation, which is of course the ultimate basis for the ruling in *Kelly v. Robinson.*

An almost equal number of Chapter 7 cases hold to the contrary. These include *In re Farrell,* 43 B.R. 115 (M.D.Tenn.1984) (district court modifies order of bankruptcy court enjoining entire criminal proceeding

---

**4.** It should be noted that, in contrast to the facts presented in *Kelly v. Robinson,* where the debtor filed her bankruptcy petition within three (3) months of her conviction, the criminal penalties assessed against the Debtors here were dated and could apparently have been discharged, even in a Chapter 7 case, under the terms of 11 U.S.C. § 523(a)(7)(B).

and merely enjoins prosecutor and crime victim from seeking restitution); *In re Vandrovec,* 61 B.R. 191 (Bankr.D.N.D. 1986) (restitution to United States Commodity Credit Corporation held dischargeable); *In re Vohs,* 58 B.R. 323 (Bankr.D.Mass. 1986) (restitution held dischargeable on consideration of, *inter alia,* § 523(a)(7) objections to dischargeability by crime victim); *In re Brown,* 51 B.R. 51 (Bankr.E.D. Ark.1985) (crime victim enjoined from receiving restitution); *In re Allman,* 43 B.R. 840 (Bankr.D.Colo.1984) (prosecutor enjoined from seeking to revoke debtor's probation for failure to pay restitution); *In re Brown,* 39 B.R. 820 (Bankr.M.D.Tenn.1984) (prosecutor enjoined from seeking restitution and crime victim enjoined from seeking restitution); *In re Redenbaugh,* 37 B.R. 383 (Bankr.C.D.Del.1984) (crime victim enjoined from seeking restitution); *In re Curly,* 25 B.R. 260 (Bankr.E.D.Pa.1982) (one of several decisions of former Chief Judge Goldhaber of this Court which enjoins criminal proceedings per 11 U.S.C. § 105(a) where it is found that the nature of the proceeding was to collect a debt); *In re Strassmann,* 18 B.R. 346 (Bankr.E.D. Pa.1982) (per TWARDOWSKI, J.) (crime victim enjoined from continuing or commencing criminal proceedings against debtor).

The few Chapter 11 cases located, which are subject to the same dischargeability provisions as Chapter 7, 11 U.S.C. § 1141(d)(2), similarly produce a mixed result. In *In re First Texas Petroleum, Inc.,* 52 B.R. 322 (Bankr.N.D.Tex.1985), the court denies an injunction and suggests that the bankruptcy courts cannot restructure a state criminal sentence. However, in *In re Landstrom Distributors, Inc.,* 55 B.R. 390 (Bankr.C.D.Cal.1985), the court holds that the automatic stay protects the debtor from collection of fines, and in *In re Ohio Waste Services, Inc.,* 23 B.R. 59 (Bankr.S.D.Ohio 1982), the court enjoins both the prosecutor and the crime victim from proceeding to attempt to collect restitution from the debtor.

We have, however, located five (5) generally-reported cases which raise the issue of collection of criminal penalties in Chapter 13 cases. Unlike cases under the other Chapters, these cases are uniform in providing at least some relief to the debtors involved in these cases, as follows: *In re Gilliam,* 67 B.R. 83 (Bankr.M.D.Tenn.1986) (criminal penalties held to be debts subject to "discharge injunction" of 11 U.S.C. § 524, although not subject to 11 U.S.C. § 362). *In re Heincy,* 58 B.R. 930 (Bankr. S.D.Cal.1986) (prosecutor enjoined from collecting restitution; crime victim of embezzlement held to have no enforceable claim against debtor); *In re Holder,* 26 B.R. 789 (Bankr.M.D.Tenn.1982) (crime victim enjoined from accepting restitution); *Lawson v. Boczonadi,* 22 B.R. 100 (Bankr.S.D.Ohio 1982) (crime victim enjoined from receiving restitution, but not from testifying against debtor in criminal proceeding); *In re Barnett,* 15 B.R. 504 (Bankr.D.Kan.1981) (court refused to issue injunction, but declared that bankruptcy stays collection of restitution). *Cf. In re Ellis, supra* (welfare department enjoined from maintaining civil action to recover overpayments).

We believe that it is not coincidental that courts faced with Chapter 13 cases would find criminal restitution to be dischargeable because of the very significant difference in the broad Chapter 13 discharge, justified, as indicated above, by the consideration that, in a Chapter 13 case, the crime victim is to be the recipient of at least a portion of the payments to which he is due. Several considerations which are starkly emphasized in the context of a Chapter 13 case bring this out. One is the concept that the entry and enforceability of a restitution order are dependent upon the ability of the defendant to pay. *See Commonwealth v. Walton,* 326 Pa.Super. 492, 494, 474 A.2d 348, 349 (1984); and *Commonwealth v. Valent,* 317 Pa.Super. 145, 149–50, 463 A.2d 1127, 1129 (1983). Hence, restitution is payable only if the dependant has funds available to pay in any event. The supervision of the bankruptcy court over the remittance of plan payments may, in practical terms, result in more signifi-

cant payments to crime victims than they might otherwise realize.

Another consideration is the concept that *no* creditors, irrespective of the nature of the debts owed to them, should be granted a preference or a priority over any other creditors. A third is recognition that, if the debtor is already paying all of his disposable income into a plan, it is theoretically and practically impossible that he will have anything left over to pay towards restitution. All of these considerations add up to the conclusion that the crime victim must share, with other creditors, acceptance of only that which the debtor is financially able to pay. Melding these considerations with a final consideration—that a Chapter 13 debtor is to receive the broadest "fresh start" possible, a concept deeply regarded since *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)— leads to the unmistakeable conclusion that the foregoing Chapter 13 cases are correct in requiring that repayment of financial penalties arising from criminal proceedings must be a part of the debtor's Plan, along with the debtors' other legitimate debts.

As we indicated earlier, we are obliged to give a more extended discussion of the decision in *Oslager, supra*, as it does involve a very similar claim by DPW to that made here, although in the context of a Chapter 7 case. We believe that the result there, while consistent with the decision in *Kelly v. Robinson* and hence correct on its facts, should not be carried over to the facts of the instant matter.

We disagree with several conclusions stated by Judge Gibbons in that case, which were unnecessary to the result attained.

▮ First, we do not agree that the purpose of restitution, per 18 Pa.C.S. § 1106, the pertinent section of the Pennsylvania Crimes Code, is solely to rehabilitate the offender rather than to, in addition, compensate the victim. The case quoted by Judge Gibbons for this principle, *Commonwealth v. Wood*, 300 Pa.Super. 463, 467, 446 A.2d 948, 949–50 (1982), does not, with all due respect, so hold. Rather, the court

holds that, in entering orders of restitution, the state courts must consider the following four (4) factors:

> (1) the amount of the loss suffered by a victim; (2) the fact that such loss was caused by conduct of the defendant; (3) that the amount awarded does not exceed the defendant's ability to pay; and (4) the type of payment that will best serve the needs of the victim and the capabilities of the defendant....

*See also, e.g., Commonwealth v. Valent*, 317 Pa.Super. 145, 149, 463 A.2d 1127, 1128 (1983). The first, second, and fourth considerations all relate to compensation of the loss suffered by the victim as a result of the crime, rather than or in addition to rehabilitation of the offender. *See Commonwealth v. Balisteri*, 329 Pa.Super. 148, 154–58, 478 A.2d 5, 8–10 (1984) (court must frame restitution award to measure compensable damages of victim). It is our belief that the purported purpose of the Crimes Code should not be a factor at all but, to the extent that it is, we cannot agree that compensation of the victim is not at least one of the principal purposes of restitution.

Secondly, we do not agree that a conclusion that restitution (or criminal fines and penalties) are dischargeable necessarily violates the principles of equity, comity, and federalism set forth in *Younger v. Harris, supra*. Instead, we believe that the Third Circuit Court of Appeals, in *In re Davis*, has set forth the path that bankruptcy courts must follow in framing relief in such matters which is consistent with the considerations in *Younger v. Harris*. We intend to adhere to the teachings of *Davis* in framing relief.

Finally, we believe that Judge Gibbons was influenced by the fact that the debtor, in *Oslager*, filed a Chapter 7 case to attempt to completely discharge her obligation within a month of her having pleaded guilty of welfare fraud. Principles established in such a factual setting should not necessarily carry over to debtors who, after making considerable payments, seek an adjustment of their restitution obli-

gation via a Chapter 13 Plan, like the Debtors here.

■ We therefore conclude that not only did the Supreme Court, in *Kelly v. Robinson*, not rule that criminal financial penalties were not dischargeable in a Chapter 13 bankruptcy, but it is unlikely that the Court, taking all of the foregoing considerations into account, would do so. Thus, we shall not do so and rule that the restitution due from the Debtors here is dischargeable in their Chapter 13 Plans and that the Debtors, and not DPW, are entitled to summary judgment.

Still remaining for disposition are the issues of the Counterclaims of the Debtors and the relief to be granted. Since we conclude that the Debtors' restitution payments are dischargeable debts, it is clear that the payments by the Debtors to the Probation Department, which undoubtedly have been or will be remitted to DPW subsequent to their respective filings, were postpetition transfers within the scope of 11 U.S.C. §§ 549(a)(1) and (a)(2)(B).

■ However, DPW questions whether, irrespective of this fact, the Debtors, as opposed to the Trustee, may avoid the transfers per 11 U.S.C. §§ 522(h) and (g)(1)[5] because it is contended that the Debtors made a "voluntary choice" to continue their restitution payments post-filing, and hence that the transfers were "voluntary." In the instant factual settings, we cannot agree. It is established in this Court that only when a debtor effects a transfer voluntarily when he acts

"free from the persuasive influence of another ... of her own free will to transfer property to the creditor.... [and] not

... where a creditor has harassed, insulted or shamed a debtor into transferring property to the creditor." *In re Seidel,* 27 B.R. 347, 351 (Bankr.E.D.Pa.1983) (per TWARDOWSKI, J.) (quoting *In re Reaves,* 8 B.R. 177, 181 (Bankr.D.S.D. 1981).

*See also In re Taylor,* 8 B.R. 578 (Bankr.E. D.Pa.1981) (per GOLDHABER, J.)

In *Seidel* the husband-Debtor undoubtedly voluntarily returned an encumbered truck, but this court held that his ignorance that his act of doing so would cause him to lose his equity in the truck rendered the transfer involuntary for purposes of setting aside the transfer by means of § 522(g)(1). In *Reaves,* the Debtor voluntarily signed a mortgage in favor of a bank to secure a debt of her husband, but the court held that the fact that she was pressured to do so by a bank employee (the only element of "pressure" was, apparently, repeated but businesslike requests that she do so) rendered this transfer "involuntary." In *Taylor,* the Debtor made a payment on a debt only after harassment from a collection agency. Judge Goldhaber held that such a payment, not made by the Debtor of her own unfettered free will, was "involuntary" for purposes of 11 U.S.C. §§ 522(g)(1) and (h).

Here, it is apparent that the only "choice" which the Debtors had was to resume making payments to the Probation Department or face incarceration. The mere possibility that incarceration would result if the payments were not made we hold to be sufficient to render the payments involuntary. The facts here, where the Debtors stopped payments and re-

---

5. These Code sections provide as follows:

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; ...

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

sumed only when they and their counsel were unable to convince the Probation Department that, under the circumstances, payments should not be remitted, present, to our thinking, the strongest possible case that the transfers were involuntary. Compared to the instant facts, the "pressure" put upon the debtors in *Taylor* and *Reaves* was *de minimis.*

Therefore, we are forced to conclude that the Debtors may set aside the postpetition transfers to DPW.

However, in framing an Order here, we must be sensitive to the interests of comity, equity, and federalism, per the *Davis* decision, and we must be assured that the result will be consistent with the scheme established in the administration of Chapter 13 bankruptcies. We shall therefore, at this time, refrain from issuing any injunction directed at either the County Probation Department or DPW. Like the *Davis* court, "[w]e decline to presume" that the County Probation Department and DPW "will disregard the obligation imposed upon them by the federal Constitution" to heed the orders of this Court. *See* 691 F.2d at 178. We shall act further only if these parties do *not* heed our directives as to their obligations in light of this Opinion. *Accord: In re Gilliam, supra,* 67 B.R. at 87.

■ We also decline the invitation of the Debtors to hold DPW in contempt. In *Allman, supra,* the contempt remedy was rejected because the criminal proceeding was not enjoined, and in *Redenbaugh* contempt was withheld because of the absence of bad faith on the part of the crime victim. Here, we also decline to enjoin the state court proceedings, and we find no evidence of bad faith on the part of DPW. This is obviously an area of the law in which the applicable principles are not settled and, although DPW's failure to cite *Oslager* may indicate its lack of reliance upon it, we cannot overlook the presence of a case so analogous in its closely factual matrix to the case at bar in which an eminent jurist appears to have reached a conclusion contrary to that reached by us. Of course, we

fully anticipate the cooperation of DPW in any other similar matters before us in the future now that our views have been expressed, and different consequences would ensue if DPW repeated this conduct as to other Chapter 13 debtors in the future.

For the foregoing reasons, we also decline to find DPW's conduct, although possibly in violation of the automatic stay, characterized by the element of willfulness, which is required to impose damages under 11 U.S.C. § 362(h).

The only remedy we shall order is that DPW remit the postpetition payments which it has or will receive to the Chapter 13 Trustee, to be distributed in accordance with the Debtors' respective Plans. We shall also accord DPW a thirty-day extension of the time to file a Proof of Claim in the JOHNSON–ALLEN case, which, unlike the STEFFLER case, we note has not been done even though the bar dates have passed. We believe that so ordering, in circumstances where a creditor in good faith believed that such a filing would be unnecessary would be "in the interest of justice and ... will not unduly delay the administration" of these cases, per Bankruptcy Rule 3002(c)(2).

An Order accomplishing the foregoing will be entered.