**In re Albert SHEPHERD.**

**Bankruptcy No. 79–1884 K.**

United States District Court,
E. D. Pennsylvania.

May 8, 1981.

Jack K. Miller, Bankruptcy Clinic, Philadelphia, Pa., for Shepherd.

Ronald Harper, Philadelphia, Pa., for Public School Employees Credit Union.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

Albert Shepherd, an employee of the School District of Philadelphia, had authorized his employer to make periodic deductions from his salary and to pay the money to the Public School Employees Credit Union. After Mr. Shepherd filed a Chapter 13 case under the Bankruptcy Code, the employer, unaware of the bankruptcy filing, continued the payroll deductions, and paid more than $500 to the Credit Union.

In the bankruptcy court, the debtor sought to compel the Credit Union to return the post-petition deductions, while the Credit Union sought to retain these funds. Bankruptcy Judge King initially entered an order directing that the money be paid over to the Chapter 13 trustee "for distribution in accordance with the payment plan," but later vacated that order and entered a new order requiring the Credit Union to pay the

money to the debtor's attorney. Now before the Court is the Credit Union's appeal from this second order.

The arguments advanced by the Credit Union confuse the purposes and statutory schemes in Chapters 7 and 13 of the Code. A brief review of these two differing chapters may serve to clarify matters.

In a Chapter 7 liquidation case, a debtor submits his property to the bankruptcy court, 11 U.S.C. § 541. The debtor's property constitutes an estate subject to administration by the bankruptcy court. The trustee's obligation is to collect the assets, reduce them to cash, and distribute the cash *pro rata* among unsecured creditors. § 726. Whether or not the distributions suffice to pay the claim in full, the entire claim is discharged. § 727(b). The goal of the Chapter 7 case is to give the debtor a fresh start, as of the date of filing of the bankruptcy petition. The post-petition earnings of a Chapter 7 debtor are not part of the estate.

Chapter 13 is an alternative to liquidation under Chapter 7, and is generally described as a rehabilitation chapter. Although the filing of a Chapter 13 petition creates an estate, § 1306, the debtor retains use and possession of his property throughout the case. § 1306(b). The Chapter 13 debtor is expected to propose a plan which contemplates the application of his future earnings to the payment of his creditors. Property of the estate may, but need not, be used to satisfy creditors. § 1322(b)(8). In effect, when a debtor files a Chapter 13 case, he elects to satisfy his creditors from future earnings, rather than from property owned at the time of filing. But a Chapter 13 plan may not be confirmed unless the present value of the deferred payments to creditors provided in the plan is at least equal to the distribution the creditors would have received if a Chapter 7 liquidation case had been filed. § 1325(a)(4).

The "property of the estate" in a Chapter 13 case includes assets and earnings acquired by the debtor after the case is commenced. § 1306. Thus, in this case, the earnings from which the School District deducted the Credit Union payments were property of the estate.

Under § 542(c) the School District, which had no knowledge of the bankruptcy filing, is not liable by reason of its having transferred the funds to the Credit Union. But that does not mean that the Credit Union is permitted to retain the money. On the contrary, § 542(a), the Credit Union must disgorge the post-petition payments, both because the money constitutes "property that the trustee may use, sell or lease under § 363 of this title . . .", and because the funds constitute "property . . . that the debtor may exempt under § 522 of this title. . . ." Moreover, the Credit Union's receipt and appropriation of the payroll deductions violated the automatic stay provided in § 362(a)(3) and (6). *See In re Taylor*, 7 B.R. 506, (E.D.Pa., 1980; Green, J.).

It should be noted that § 542(a) is not limited to property which will necessarily be used, or to property as to which exemption has actually been claimed by the debtor. That the money here in question, representing a portion of the debtor's post-petition earnings, "may" be used by the trustee in a Chapter 13 case is readily apparent. It is equally clear that these funds "may" be exempt. § 522(d)(5) permits the debtor to claim exemption of post-petition earnings up to a maximum of $7900 when, as in this case, the debtor does not use any portion of the Federal Homestead Exemption. § 522(d)(1).

It is true that, in this case, the debtor did not specifically claim exemption for post-petition wages. Even if § 542(a) is construed to require an actual claim of exemption, it would be fully consistent with the equitable administration of the Bankruptcy Code to permit the debtor to amend his claim of exemptions to include post-petition wages (Rule 13–109).

Finally, it bears mention that § 549 of the Code specifically authorizes the trustee to avoid post-petition transfers of property of the estate. The transferee can defeat such a claim if he acted in good faith and gave "present fair equivalent value."

While the Credit Union's good faith in this case is assumed, the fact remains that it did not give "present fair equivalent value" when it accepted the payments as a *pro rata* discharge of the antecedent debt. Thus, the Chapter 13 trustee could have avoided the transfer. § 522(h) of the Code authorizes a debtor to avoid such a transfer, when the trustee does not act, so long as the transfer in question was not a voluntary transfer by the debtor. In the context of this Chapter 13 case, the pre-bankruptcy authorization of payroll deductions, while originally a voluntary act of the debtor, does not, in my view, suffice to establish that the School District's post-petition transfer to the Credit Union was a knowing and voluntary transfer by the debtor.

The Credit Union complains that the bankruptcy judge did not consider its supplemental memorandum of law. It appears from the record that the memorandum was filed the day before Judge King's order was entered, so there is no reason to assume it was not considered. Be that as it may, the supplemental memorandum merely reiterates the same arguments which had been unsuccessfully presented in opposition to the original order.