In the Matter of Dora P. HUEBNER, Debtor.

Dora P. HUEBNER, Plaintiff,

v.

Carl TRAPP, Defendant.

Adv. No. 81–0085.

United States Bankruptcy Court, W. D. Wisconsin.

March 4, 1982.

A. Victoria Eherenman, The Legal Clinic, S.C., Madison, Wis., for debtor, plaintiff.

Thomas J. Levi, Dierker & Bender, S.C., Watertown, Wis., for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

On June 11, 1980, Carl Trapp received a judgment for $1,566.20 in the Circuit Court for Dodge County, Wisconsin, Small Claims Division, Case No. 80–SC–777, in an action for back rent against Dora Huebner. On July 17, 1980, the plaintiff and Thomas J. Levi, attorney for Carl Trapp, entered into a written agreement to satisfy this judgment. Under this agreement, Huebner agreed to pay $50 a month to Trapp. The agreement was intended to be an alternative to any other legal means for collection of the judgment. In connection with the agreement and as additional consideration for the agreed forbearance, on July 17, 1980, the plaintiff signed a wage assignment in the amount of $25 per week. The assignment was to be held by the attorneys for Trapp until Huebner defaulted in the payment of $50 per month, at which time the wage assignment could be filed with her employer.

Huebner failed to make the $50 payment due in December, 1980, and in January, 1981, the wage assignment was filed with her employer, Watertown Metal Products, Watertown, Wisconsin. Trapp took no additional action after July 17, 1980, to execute or collect the subject judgment. The amount of money collected via the wage assignment between the dates of January 16, 1981, and April 16, 1981, was $300. Huebner made no objection in any form to the wage assignment during the three months it was in operation.

On April 16, 1981, Huebner filed a petition in bankruptcy. On April 22, 1981, she filed a complaint alleging that she was entitled to the return of the $300 paid to Trapp under the wage assignment. She argued that this payment constituted a preference under 11 U.S.C. § 547(b), which the debtor is entitled to recover under 11 U.S.C. § 522(h).

On October 6, 1981, the case was tried. It was agreed that the sole issue was the voluntariness of the transfers under the wage assignment. Huebner contends that payments made under the wage assignment were not her voluntary transfer of her property.

11 U.S.C. § 547(b) allows a trustee to avoid any transfer of the debtor's property which constitutes a preference. 11 U.S.C. § 522(g) allows the debtor to exempt such property recovered to the extent that it could have been exempted if it had not been transferred if (1) the transfer was not a voluntary transfer by the debtor and (2) the debtor did not conceal the property. If, as in this case, the trustee takes no steps to avoid a preferential transfer under 11 U.S.C. § 522(h), the debtor may avoid the transfer himself, to the extent he could have exempted the property under 11 U.S.C. § 522(g) had the trustee acted.

The Bankruptcy Code is silent about what constitutes a voluntary transfer under 11 U.S.C. § 522(g). The legislative history of this section gives one example of an involuntary transfer (the fixing of a judicial lien), but provides no further illumination.

Voluntary is defined in Black's Law Dictionary as:

Unconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself. Done by design or intention, purpose, intended. Produced in or by an act of choice. Resulting from choosing. The word, especially in statutes often implies knowledge of essential facts. Black's Law Dictionary 1746–47 (Rev. 4th ed. 1981). (Citations omitted.)

Only a handful of cases have considered the question of voluntariness under 11 U.S.C. § 522(g). In most of these cases, the transaction was deemed voluntary or involuntary with no discussion. See *In Re Cox*, 10 B.R. 268, 7 B.C.D. 733, 4 C.B.C.2d 456, BANKR.L.REP. (CCH) ¶ 67,969, (Bkrtcy., D.Md.1981) (garnishment by judgment creditor involuntary), *In Re Saberman*, 3 B.R. 316, 6 B.C.D. 146, 1 C.B.C.2d 671 (Bkrtcy.,

N.D.Ill.1980) (fixing of statutory mechanic's liens involuntary), *In Re Lamping*, 8 B.R. 709, BANKR.L.REP. (CCH) ¶ 67,836 (Bkrtcy., E.D.Wis.1981) (granting a security interest voluntary), *In Re De Shong*, 14 B.R. 179, 5 C.B.C.2d 105 (Bkrtcy., D.Del. 1981) (granting of a security interest voluntary), *In Re Smith*, 16 B.R. 111, BANKR.L. REP. (CCH) ¶ 68,485 (Bkrtcy., E.D.Wis. 1981), and *In Re Tuttle*, 15 B.R. 14, 8 B.C.D. 468, 5 C.B.C.2d 618 (Bkrtcy., D.Kan.1981) (bank deposit voluntary).

Two cases which go into somewhat more detail on the issue of voluntariness are *In Re Reaves*, 8 B.R. 177, 7 B.C.D. 327 (Bkrtcy., D.S.D.1981), and *In Re Shepherd*, 12 B.R. 151, 7 B.C.D. 956, 4 C.B.C.2d 1479 (E.D.Penn.1981). In *In Re Reaves*, the debtor, not fully advised of its consequences, executed a third mortgage on her home to secure the debts of her husband's corporation. She had no connection with the corporation and was not liable for its debts. The court held that the transfer of the third mortgage was involuntary. The court found that the debtor had been pressured into signing the third mortgage and that the creditors had concealed material facts from her. Therefore, the court found that the transfer was involuntary. The instant case seems readily distinguishable. There is no evidence that Huebner was coerced or pressured by the creditors into signing the wage assignment. Furthermore, Huebner did not assign her wages to pay off a debt on which she was not personally obligated. Finally, there is no evidence that Huebner was unaware of the consequences of signing the wage assignment.

*In Re Shepard* is more interesting, but even less instructive. The debtor signed a wage assignment agreement before filing in bankruptcy which was treated as remaining in effect after the debtor's petition had been filed. The District Court, on appeal, allowed the debtor to recover the money which had been deducted after the filing of the bankruptcy petition. This reasonable result was explained by the court.

[T]he pre-bankruptcy authorization of payroll deductions, while originally a voluntary act of the debtor, does not, in my view, suffice to establish that the School District's post-petition transfer to the Credit Union was a knowing and voluntary transfer by the debtor. *In Re Shepard*, 12 B.R. 151, 7 B.C.D. at 957.

It is sufficient to note that in the present case there is no question regarding post-filing wages, so the commencement of the bankruptcy case cannot be evidence of the voluntariness of the transfers we must consider.

■ The one example given in the legislative history of 11 U.S.C. § 522(g) of an involuntary transfer (the fixing of a statutory lien) indicates that Congress intended to allow recovery of only those transfers beyond debtor's personal control. Huebner, however, had significant control of whether the transfers would take place, both at the time of the agreement and when the assignment became effective. She signed the agreement and the wage assignment without unusual duress and understood that should she fail to make the payments agreed to, the wage assignment would be filed with her employer. Admittedly, she entered into the agreement knowing that the creditor would take other steps to collect his judgment if she did not do so. She bargained to receive greater leniency under the agreement in repaying the debt than she would have if the creditor had used garnishment or other means to secure payment of his judgment. To hold that a transfer is involuntary merely because the transferee receives something of value or avoids an unpleasant consequence as a result of the transfer, would result in no transfer short of a gift being considered voluntary. This result does not seem to have been intended by Congress.

■ Huebner also argues that the transfer was involuntary because the creditor had the power to file the wage assignment once it had been signed without her renewed consent. Under Wis.Stats. § 422.-404, however, an assignment of wages is revocable at will by the assignor. Therefore, Huebner had the power at any time to prevent her wages from being transferred.

Even if one accepts the contention that in order for a transfer to be voluntary, the debtor must have the power to prevent it at every point until it is completed, it is clear that Huebner had that power in this case.

Upon the foregoing which constitutes my findings of fact and conclusions of law herein, it is

ORDERED that plaintiff's claim to the $300 paid under the wage assignment to the defendant is denied and the complaint herein is dismissed.