**In re Jose Ernesto TREVINO, SS#: 449–94–9185 Belinda Keller Trevino, SS#: 238–11–7488, Debtors.**

**Bankruptcy No. 88–02778–SN7.**

United States Bankruptcy Court, E.D. North Carolina.

Feb. 14, 1989.

Anthony L. Register, Wilmington, N.C., for debtors.

Algernon L. Butler, Jr., Wilmington, N.C., for Trustee.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the objection to the debtors' claim of exemptions filed by Algernon L. Butler, Jr., the chapter 7 trustee, on January 3, 1989. The trustee has objected on various grounds to a number of the exemptions claimed by the debtors in this case. After proper notice, a hearing was held in Raleigh, North Carolina, on January 23, 1989.

The first issue the court will address is whether the male debtor may claim as exempt his 1987 Ford 250 truck as a tool of his trade pursuant to N.C.GEN.STAT. § 1C–1601(a)(5).[1] Mr. Trevino testified that he has been employed as a contractor hauling boats for a boat builder. That has been his only employment in the past year. The boat builder furnishes a boat trailer, but Mr. Trevino uses his own Ford truck to haul that trailer. The amount of boat hauling the debtor does varies, but he usually makes two trips a week, sometimes to as far away as Massachusetts or Alabama. Mr. Trevino also uses the truck for personal matters such as trips to the grocery store and family visits. There was no evidence presented that the truck was uniquely designed or equipped for boat hauling.

Although there are apparently no decisions construing North Carolina law on this question, courts from other jurisdictions are divided on whether a vehicle used in a debtor's business may be exempted as a tool of the trade. *See e.g., In re McNutt,* 87 B.R. 84 (9th Cir.BAP 1988) (truck used to carry the debtor's drywall tools and materials qualifies as a tool of the trade) and *In re Harrell,* 72 B.R. 107 (Bankr.N.D.Ala. 1987) (truck used by debtors to pick up produce and to sell by the side of the road is not a tool of the trade; in fact, no automobile may qualify as a tool of the trade). This court finds more persuasive the reasoning of those courts which have held that a motor vehicle cannot qualify for the tool of the trade exemption, at least when that motor vehicle is not specially outfitted for the debtor's trade. In support of this conclusion, the court notes that the word "tool" is not one commonly used to describe a motor vehicle, that the exemptions provided by federal bankruptcy law and by many states including North Carolina create separate exemption categories for motor vehicles and for tools of the trade, and that the exemption for tools of the trade provided by the Bankruptcy Code and by many states including North Carolina sets a maximum value which may be claimed which is far less than the value of most motor vehicles.[2] The court holds that

---

**1.** N.C.GEN.STAT. § 1C–1601(a)(5) provides an exemption for "[t]he debtor's aggregate interest, not to exceed five hundred dollars ($500) in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor."

The Bankruptcy Code permits debtors to choose between the federal bankruptcy exemptions set forth in 11 U.S.C. § 522(d) and the exemptions provided by applicable state and federal nonbankruptcy law unless applicable state law expressly denies debtors that choice. 11 U.S.C. § 522(b). If a state "opts out" of the § 522(d) exemptions, as has North Carolina, debtors in that state are limited to the exemptions provided by state law and federal nonbankruptcy law. *See In re McLamb,* 93 B.R. 72, 74 (Bankr.E.D.N.C.1988).

**2.** North Carolina law will not permit a debtor to claim more than a $500.00 exemption for tools of the trade.

When state law provides no such ceiling and when that state's tool of the trade exemption has been interpreted to include motor vehicles, creditors may suffer harsh results when a debtor seeks to avoid a nonpossessory, nonpurchase-money lien in tools of the trade pursuant to 11 U.S.C. § 522(f). *See In re Taylor,* 861 F.2d 550 (9th Cir.1988), in which the debtors were permitted to avoid a lien in a logging truck and trailer worth approximately $50,000 because that collateral was subject to complete exemption as a tool of the trade under Montana law; the creditor whose lien was avoided was owed in excess of $125,000. In reaching this result, the Ninth Circuit apparently viewed itself as bound by a decision of the Montana Supreme Court that vehicles may qualify as tools of the trade and that there is no monetary ceiling on the exemption.

the 1987 Ford truck used by the debtor in his boat hauling business does not qualify as a tool of the trade;[3] the trustee's objection to this claimed exemption will be allowed.

The trustee also objects to the female debtor's claim that her 1985 horse trailer qualifies for exemption either as a motor vehicle pursuant to N.C.GEN.STAT. § 1C–1601(a)(3)[4] or as a household good or appliance pursuant to N.C.GEN.STAT. § 1C–1601(a)(4).[5] Although the horse trailer is not motorized, the debtors argue that it qualifies as a motor vehicle for exemption purposes because it falls within the definition of a motor vehicle contained in Chapter 20 of the North Carolina General Statutes.[6] The definitions set forth in N.C. GEN.STAT. § 20–4.01 are prefaced with the statement that they "apply throughout this Chapter ...," but there is no indication that the definitions apply outside the context of Chapter 20. In view of the fact that North Carolina's motor vehicle exemption is found in Chapter 1C, not Chapter 20 of the North Carolina General Statutes, little weight should be given to the Chapter 20 definition in determining the debtors' exemption rights. This court does not believe that a horse trailer without a motor qualifies as a motor vehicle subject to exemption pursuant to N.C.GEN.STAT. § 1C–1601(a)(3); the trustee's objection on this point will be allowed.

The court also rejects the debtors' contention that the horse trailer qualifies for exemption under N.C.GEN.STAT. § 1C–1601(a)(4). The court believes that it would require a strained reading of the language of that section to hold that the trailer constitutes a household good or appliance or falls within any of the other categories enumerated in § 1C–1601(a)(4). The trustee's objection to the debtors' claim that the horse trailer is subject to exemption pursuant to § 1C–1601(a)(4) will also be allowed.

The debtors also rely on N.C.GEN. STAT. § 1C–1601(a)(4) in claiming $100 worth of tools as exempt. The trustee contends that the tools in question do not qualify as household goods because they were used for auto repairs, rather than household work. The male debtor testified that the tools included sockets, wrenches, pliers, hammers, a screwdriver, a level, and a handsaw. Although the male debtor testified that he had used the sockets and wrenches to work on cars, he testified that those tools could also be used to fix the drain on a sink. The court is of the opinion that the tools referred to in the male debtor's testimony do qualify for exemption under § 1C–1601(a)(4), and the trustee's objection on this point will be denied.

The trustee's final objection concerns the debtors' claim of exemption with respect to property which was transferred by the debtors to the female debtor's father, Mr. Keller, prior to the filing of the debtors' bankruptcy petition. The debtors seek a ruling that they are entitled to exempt this property in the event that the trustee is able to avoid the transfers to Mr. Keller as preferential.

---

3. The debtors' schedules indicate that the truck has a value of $10,000 and is secured by a lien held by First Citizens Bank in the amount of $10,000. Because, as a general proposition, a debtor may not use an exemption to defeat a valid contractual security interest, *In re Laues*, 90 B.R. 158 (Bankr.E.D.N.C.1988), it is not clear that the debtors would be able to exempt the truck even if it did qualify as a tool of the trade.

4. N.C.GEN.STAT. § 1C–1601(a)(3) provides an exemption for "[t]he debtor's interest, not to exceed one thousand dollars ($1,000) in value, in one motor vehicle."

5. N.C.GEN.STAT. § 1C–1601(a)(4) provides an exemption for "[t]he debtor's aggregate interest, not to exceed two thousand five hundred dollars ($2,500) in value for the debtor plus five hundred dollars ($500) for each dependent of the debtor, not to exceed two thousand dollars ($2,000) total for dependents, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor."

6. N.C.GEN.STAT. § 20–4.01(23) defines a motor vehicle as "[e]very vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle. This shall not include mopeds as defined in G.S. § 204.01(27)d1."

The debtors testified that Mr. Keller loaned them approximately $10,000 to pay taxes and bought them a 1981 horse trailer [7] for $4,000 with the understanding that the debtors would eventually repay the purchase price. Some time after the tax loan and the trailer purchase and within a year prior to the filing of the debtors' bankruptcy petition, the debtors made an $1,800 payment on their debts to Mr. Keller. In addition, the 1981 horse trailer, which had been titled in the male debtor's name, was transferred prepetition to Mr. Keller when the debtors were unable to pay him what they owed for that trailer. The evidence indicates that Mr. Keller did not have a formal security interest in either the trailer or the $1,800 which was transferred.

■ The relevant sections of the Bankruptcy Code with respect to whether a debtor may exempt property subject to avoidance by the trustee are 11 U.S.C. § 522(g) and (h).[8] In *Matter of Huebner*, 18 B.R. 193, 194 (Bankr.W.D.Wis.1982), the court summarized the workings of § 522(g) and (h):

> 11 U.S.C. § 547(b) allows a trustee to avoid any transfer of the debtor's property which constitutes a preference. 11 U.S.C. § 522(g) allows the debtor to exempt such property recovered to the extent that it could have been exempted if it had not been transferred if (1) the

transfer was not a voluntary transfer by the debtor and (2) the debtor did not conceal the property. If, as in this case, the trustee takes no steps to avoid a preferential transfer under 11 U.S.C. § 522(h), the debtor may avoid the transfer himself, to the extent he could have exempted the property under 11 U.S.C. § 522(g) had the trustee acted.[9]

In the present case, the trustee has not recovered any preferences from Mr. Keller so as to bring § 522(g) directly into play and the debtors have not brought an action to avoid the transfers to Mr. Keller under § 522(h). Although it is questionable whether the debtors may rely upon § 522(g) or (h) when neither the trustee nor the debtors have brought an avoidance action, neither party has objected to the court determining whether the property in question could be exempted if the transfers to Mr. Keller were to be avoided. The court will therefore rule on the issue presented based on the assumption that the transfers are avoidable.

The trustee does not contend that the debtors could not exempt the property in question if it had not been transferred prepetition and he does not contend that the debtors concealed the property; the crucial issue is whether the transfers from the debtors to Mr. Keller were voluntary. The Bankruptcy Code does not provide a defini-

---

**7.** This is a different horse trailer from the 1985 horse trailer discussed earlier in the opinion.

**8.** 11 U.S.C. § 522(g) and (h) read as follows:
(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
(B) the debtor did not conceal such property; or
(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.
(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this

section if the trustee had avoided such transfer, if—
(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
(2) the trustee does not attempt to avoid such transfer.

**9.** The debtors take the position that the restrictions of § 522(g) and (h) on a debtor's ability to exempt property do not apply in states such as North Carolina which have opted out from the exemptions provided by 11 U.S.C. § 522(d). The debtors cite no cases so holding and the court has found none. In 3 L. King, *Collier on Bankruptcy* ¶ 522.08, at 522–32 (15th ed. 1988), it is stated that § 522(g) supersedes state law and is controlling with respect to property recovered or recoverable by the trustee even when the debtors are claiming exemptions provided by state law, and the court believes this is a correct statement of the law.

tion of what constitutes a voluntary transfer under 11 U.S.C. § 522(g). The legislative history provides one example of an involuntary transfer (the fixing of a judicial lien), but provides no further illumination. *See Matter of Huebner*, 18 B.R. at 194.

Prior case law does provide some guidance. In *In re Savage*, 92 B.R. 259, 261 (Bankr.S.D.Ohio 1988), the court states that § 522(g) recognizes that, where a property interest has been involuntarily taken from a debtor by means such as execution, repossession, or certification of a judgment, it would be inequitable not to permit that debtor to assert an otherwise allowable exemption in that property once it has been recovered by the trustee. However, the same rationale does not apply when the property had been voluntarily transferred by the debtor. *Id.* When a debtor voluntarily grants a security interest in property or makes an absolute transfer, he gives up his exemption rights with respect to that property and he cannot recover those rights simply because the bankruptcy trustee can acquire rights superior to the transferee. *In re Rollins*, 63 B.R. 780 (Bankr.E.D.Tenn.1986). A transfer is involuntary only when it is beyond the debtor's personal control, but not when it is made simply because the debtor knows that the creditor would otherwise pursue other collection efforts. *Matter of Huebner*, 18 B.R. at 195.[10]

▪ The debtors argue that the involuntary transfer requirement of § 522(g) and (h) should be construed narrowly to apply only to consensual security interests which may be avoided by the trustee, and not to avoidable absolute transfers of property. There is nothing in the text of § 522(g) or (h) to support such a distinction and the

debtors have cited no cases drawing that distinction. The debtors also argue that it is not fair to favor debtors who force creditors to fully pursue their legal rights before satisfying their debts over those debtors who acknowledge their debts and make payment without forcing creditors to exercise their legal remedies. The debtors further contend that creditors should not receive a windfall by having access to property which would have been beyond their reach had it not been transferred by the debtors in the first place. The court is of the opinion that these criticisms of § 522(g) and (h) are more properly addressed to Congress. In enacting § 522(g) and (h), Congress appears to have been taking the view that debtors should not be permitted to exempt property which they had already willingly given up. The court cannot accept the debtors' argument that any transfer of property in full or partial satisfaction of a preexisting debt is not a voluntary transfer for purposes of § 522(g) and (h).

▪ The debtors have the burden of showing that a transfer was not voluntary under 11 U.S.C. § 522(g) and (h), *In re Dargis*, 36 B.R. 866, 868 (Bankr.E.D.Pa. 1984), and the court finds that that burden has not been met in this case. The transfers in the present case appear to have been made primarily because of a sense of moral obligation the debtors felt to Mr. Keller and also because of the possibility that Mr. Keller could take legal action against the debtors to recover what he was owed. The court finds that these facts do not establish that the transfers were involuntary. The facts of this case are somewhat similar to those in *In re Nolen*, 40 B.R. 6 (Bankr.M.D.Ala.1984), in which the

---

**10.** *But see In re Taylor*, 8 B.R. 578 (Bankr.E.D. Pa.1981), in which the court held that an $800 payment to an unsecured creditor was involuntary when the payment was made in the face of the creditor's threat to take the debtor's home away by execution and sheriff's sale. The holding in *Taylor* may have been based on the fact that this threat was unrealistic; it appears highly unlikely that the debtor's failure to pay could have resulted in the loss of her home because the total unsecured debt to the threatening creditor was less than $3,000. Other instances in which a transfer has been held to be involun-

tary under § 522(g) or (h) include when the payment was made pursuant to a court order, *In re Mason*, 69 B.R. 876 (Bankr.E.D.Pa.1987), and when the debtor granted a security interest only after the banker had told her that the debtor's estranged husband's business would fail if she did not do so and when the banker failed to explain the effect of an exemption waiver clause. *In re Reaves*, 8 B.R. 177 (Bankr.D.S.D. 1981). The *Reaves* court held that a voluntary transfer does not occur where a creditor has harassed, insulted or shamed a debtor into transferring the property to the creditor.

debtor transferred the deed to a house to his father after his father had paid off a $50,000 mortgage on that house on the day that foreclosure proceedings were to begin. The bankruptcy court held that, because the transfer of the property from the debtor to his father was voluntary, the debtor could not claim an exemption in his home after the trustee had recovered the property from the father as a fraudulent transfer. This court finds that, as in *Nolen*, a transfer of property to a family member to repay prior financial assistance is not involuntary in the absence of other extenuating circumstances. The trustee's objection to the debtors' claim of exemptions on property which had been transferred prepetition to Mr. Keller is therefore allowed.

The debtors have requested leave to amend their claims of exemptions in the event that the court allows some of the trustee's objections. That request will be allowed and the debtors shall fifteen (15) days from the date of entry of this order to file their amended exemptions. If the schedules are properly amended, the trustee may recover his fees and costs in objecting to the exemptions from the debtors in the event that there are not sufficient assets to pay those costs from the estate.

SO ORDERED.