**Nelson DECKELBAUM Chapter 11 Trustee of the Estate of James L. Bohrer,**

v.

**COOTER, MANGOLD, TOMPERT & CHAPMAN, P.L.L.C., et al.**

**No. CIV.A.WMN–99–1586.**

United States District Court, D. Maryland.

Oct. 4, 2001.

Nelson Deckelbaum, Deckelbaum Ogens and Raftery, Bethesda, MD, pro se.

Arnold M. Weiner, Snyder, Weiner, Weltchek, Jacobs & Slutkin, Baltimore, MD, Dale A. Cooter, Cooter Mangold Tompert and Wayson LLP, Washington, DC, for defendants.

### MEMORANDUM

NICKERSON, District Judge.

Before the Court is Plaintiff's Motion for Partial Summary Judgment. Paper No. 37. Defendants have opposed the motion. Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Plaintiff's motion will be granted.

## I. BACKGROUND

A more detailed discussion of the lengthy history of this case appears in an earlier memorandum issued by this Court. *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.*, 2000 WL 1593467 (D.Md. Oct.20, 2000) (Civil Action No. 99–1586). Only facts relevant to the issues now before the Court will be presented here.

Plaintiff, the Chapter 11 trustee, brought this action against Defendant law firms to recover approximately $483,000 in legal fees that were allegedly paid to Defendants from Debtor funds. Debtor, James L. Bohrer, had filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in March, 1992. He continued as debtor-in-possession until January 27, 1997, when Plaintiff was appointed as Trustee. At the time Debtor filed his petition, his primary asset was his 85% limited partnership interest and 5% general partnership interest in Sugarloaf Centre Limited Partnership ("SCLP"). The remaining 10% limited partnership interest was held by Debtor's wife, Mrs. Bohrer.

During August and September, 1995, the following events transpired, without notice to creditors or court approval:

1. The James L. Bohrer Irrevocable Trust (the "Trust") was created, naming Debtor as both trustee and sole beneficiary of the Trust.

2. Dunhill Management Company, Inc. ("Dunhill") was formed with Debtor as sole

director and officer. All of Dunhill's stock was issued to the Trust.

3. SCLP and Dunhill entered into a Management Agreement (the "Agreement") giving Dunhill the right to manage Sugarloaf Centre until December 31, 2033. The Agreement further provided that Dunhill was to receive an annual commission equal to 10% of the Centre's gross rents.

4. HRB, LLC ("HRB") was created with Debtor's wife as the sole shareholder and president and Debtor as vice-president.

In November, 1995, also without notice to the creditors or court approval, these additional events occurred:

1. Debtor withdrew as general partner of SCLP.

2. Mrs. Bohrer revoked Debtor's option to purchase her 10% limited partnership interest in SCLP.

3. Mrs. Bohrer assigned her right to purchase a bankrupt partner's interest, i.e., Debtor's interest, in SCLP to HRB, which then exercised the right.

4. By unanimous consent, the partners elected to continue SCLP as a limited partnership.

5. Mrs. Bohrer's interest in SCLP was divided into a 5% limited partnership interest and a 5% general partnership interest, with the general partnership interest going to HRB.

On January 27, 1997, the Bankruptcy Court appointed Plaintiff Deckelbaum as trustee. In so doing, the Court cited Debtor's "utter and complete disregard of his responsibility as a fiduciary," Transcript of April 4, 1997 Hearing at 2–98, as the basis for its decision.

On April 11, 1997, the Bankruptcy Court entered a preliminary injunction[1] granting the following relief to the Trustee on behalf of Debtor's estate:

1. Debtor's withdrawal as general partner declared a nullity.

2. Debtor's general partnership interest in SCLP assigned to the bankruptcy estate.

3. The Trust, HRB, and Dunhill ordered to turn over all assets to Trustee.

4. Management Agreement between SCLP and Dunhill nullified.

5. Debtor, HRB, and those acting in concert with them were prohibited from paying, or causing SCLP to pay, any further sums of money to the Debtor, to HRB, to BRH, LLC ("BRH"),[2] to the Trust, to Dunhill, to Mrs. Bohrer, or to those acting in concert with them.

As a basis for the grant of the preliminary injunction, the Bankruptcy Court found that "the James L. Bohrer irrevocable trust, that Dunhill Management, Incorporated, the BRH and HRB are all alter egos of the debtor, and that Mrs. Bohrer was his faithful aider and abetter." Transcript of April 4, 1997 Hearing at 2–103.

The parties do not dispute that the above-described actions of August, September, and November, 1995, were taken with the assistance of the law firm of Cooter, Mangold, Tompert & Chapman, P.C. ("CMTC, PC").[3]

---

1. The preliminary injunction was affirmed by the District Court, see, Deckelbaum v. Bohrer, 1997 WL 908921 (D.Md. Sept.4, 1997), and by the Fourth Circuit Court of Appeals. See, In re Bohrer, 145 F.3d 1323, 1998 WL 228198 (4th Cir. May 8, 1998).

2. BRH was created by Debtor and Mrs. Bohrer in the time between when the Trustee filed the Injunction Motion and when the hearing on that Motion was held.

3. CMTC, PC was dissolved on June 14, 1996, whereupon Defendant law firm CMTC, P.L.L.C. was incorporated. In June, 1997, the name of CMTC P.L.L.C. was changed to Cooter, Mangold & Tompert, P.L.L.C., and in

In his Complaint, Plaintiff alleges that legal fees in the amount of $483,016 that were paid to Defendants between July, 1995, and February, 1997 were property of the bankruptcy estate.[4] In this motion for partial summary judgment, however, Plaintiff seeks to recover only $234,382,[5] which represents the sum of eleven payments that were made to Defendant law firms after the dissolution of CMTC, PC, on June 14, 1996. Plaintiff seeks partial summary judgment in this amount on three counts of the Complaint: turnover of property of the estate pursuant to 11 U.S.C. § 542 (Count 1); avoidance of unauthorized post-petition transfers pursuant to 11 U.S.C. § 549 (Count 2); and violation of the automatic stay pursuant to 11 U.S.C. § 362 (Count 3).

## II. LEGAL STANDARD

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if, when applied to the substantive law, it affects the outcome of litigation. *Id.*

A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir.1987).

If the movant demonstrates there is no genuine issue of material fact and that she is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence which demonstrates that a triable issue of fact exists for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

## III. DISCUSSION

The Court will first address Plaintiff's claim under the Chapter 11 automatic stay provision, 11 U.S.C. § 362, which provides in pertinent part:

"Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate ...".

11 U.S.C. § 362(a)(3).

The Court finds section 362 inapplicable to the instant case. By its very language, section 362 operates to halt efforts to ob-

---

October, 1997, the name was changed again to Cooter, Mangold, Tompert & Wayson, P.L.L.C. ("CMTW"), also named as Defendant in this case. The parties dispute whether Defendants are successors in interest to CMTC, PC.

**4.** Defendants argue that they represented and were paid by the corporate entities SCLP and Dunhill, not Debtor.

**5.** In his motion for partial summary judgment, Plaintiff states that the sum of the transfers made after June 14, 1996 is $309,382.* The Court must assume that this was the result of a mathematical error.

tain possession or control of property of the estate that arose or existed prior to the time of filing. Plaintiff, however, seeks to recover payments allegedly made to Defendants years after Debtor filed for bankruptcy.

■ The automatic stay is intended to give the debtor a "breathing spell" from creditors and an opportunity to reorganize or discharge his debts in an orderly fashion. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–42 (1977), U.S.Code Cong. & Admin.News 1977, p. 5963. *See also In the matter of Vitreous Steel Products Co.,* 911 F.2d 1223, 1231 (7th Cir.1990) (stating that "[t]he automatic stay prevents all pre-petition creditors from taking any action to collect their debts"); *Knopfler v. Glidden, Co.,* 149 B.R. 517, 521 (Bankr.N.D.Ill.1992) (explaining that section 362 "automatically stays most efforts to enforce pre-petition claims ... upon the filing of a bankruptcy petition ..."); *STMIMA Corp. v. Carrigg,* 216 B.R. 303, 304–05 (1st Cir. BAP 1998) (noting that "a violation of the automatic stay, § 362(a)(3) occurs when a creditor continues to hold property of the estate post-petition, even where the initial pre-petition retention was lawful"). Here, the legal fees that Plaintiff seeks to recover were paid several years after Debtor filed for bankruptcy in 1992. Plaintiff does not allege that the fees were payment for pre-petition services. Therefore, summary judgment on Count 3 must be denied.

Plaintiffs also attempt to recover the legal fees pursuant to the turnover provision of 11 U.S.C. § 542. Section 542(a) requires that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 ... or that the debtor may exempt under section 522 ... shall deliver to the trustee ... such property or the value of such property." Courts have concluded that section 542 provides for the turnover of pre-petition transfers, while section 549 is the appropriate means to attack post-petition transfers. *See, e.g., Vogel v. Russell Transfer, Inc.,* 852 F.2d 797, 800 (4th Cir. 1988) ("trustee's power to avoid transfers of property of the estate that occur *after* commencement of a bankruptcy case is generally given in section 549"); *In re 31–33 Corp.,* 100 B.R. 744, 747 (Bankr.E.D.Pa. 1989) (" § 549 appears to be the sole provision addressing avoiding powers of the trustee to avoid or set aside *post-petition* transfers"); *Miller v. Lane,* 167 B.R. 729 (Bankr.D.Mass.1994). *But see In re Shepherd,* 12 B.R. 151, 153–54 (E.D.Pa.1981) (suggesting that post-petition transfers may be attacked under either § 542 or § 549).

Several policy reasons support the confinement of actions based on post-petition transfers to section 549, rather than section 542. For example, if both section 542 and 549 were available to avoid post-petition transfers, the statute of limitations contained within § 549(d) would be rendered meaningless, since a trustee who is time-barred by § 549(d) could merely invoke § 542. *See In re 31–33 Corp.,* 100 B.R. at 747–48; *Burtch v. Hydraquip, Inc.,* 227 B.R. 244, 260 (Bankr.E.D.Pa. 1998). Therefore, section 542 is also an inappropriate means for Plaintiff's attempt to recover the post-petition legal fees.[6]

---

**6.** Defendants previously moved for summary judgment on, *inter alia,* Plaintiff's § 542 claim, and the motion was denied. *Deckelbaum,* 2000 WL 1593467. In that motion, had Defendants not obscured their assertion of § 542's inapplicability with tangential arguments and mischaracterizations of the applicable law, they might have succeeded. Having now focused on the specific inquiry of whether § 542 is appropriate for attacking post-petition transfers, the Court finds that it is not. This conclusion does not alter the outcome of that earlier decision, however, because Defendants were denied summary judgment on multiple grounds.

■ The Court now turns to Plaintiff's claim under section 549 of the Bankruptcy Code, which states:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). It is settled that the money transfers at issue in this case all occurred after the commencement of Debtor's bankruptcy case. The inquiry now before the Court is threefold: (1) did the money transfers to Defendant law firms constitute "property of the estate;" (2) were they authorized under the law or by the Bankruptcy Court; and (3) are Plaintiff's claims barred by the two-year statute of limitations provision of § 549(d).

A. "Property of the Estate"

Three separate courts have examined the evidence in this case and have reached the conclusion that, based upon Debtor's manipulations of multiple corporate entities in 1995, Dunhill, HRB, BRH, and the revocable trust, were all alter egos of the debtor. See Transcript of April 4, 1997 Bankruptcy Court Hearing; Deckelbaum v. Bohrer, 1997 WL 908921 (D.Md. Sept.4, 1997); In re Bohrer, 145 F.3d 1323, 1998 WL 228198 (4th Cir.1998). Based on the same evidence, and for the same reasons, this Court does not differ in its conclusion. The facts show beyond genuine dispute that Debtor used the corporate form as a shield to act in his own interest. Here, the payments Plaintiff seeks to recover were paid out of Dunhill accounts. Pl.'s Mot.

for Part. Summ. J. at 13–14. Under the broad definition of estate property set forth in 11 U.S.C. § 541, the property of Dunhill, as Debtor's alter ego, should be treated as if it were in fact the property of Debtor's estate. Therefore, the Court finds that the eleven payments transferred from Dunhill to Defendants after June 14, 1996 constituted property of the estate.

B. Authorization [7]

Section 363(c)(1) of the Bankruptcy Code authorizes the debtor to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business" without notice or hearing. 11 U.S.C. § 363(c)(1). Plaintiff contends that the legal fees paid by Dunhill to Defendant law firms were not in the debtor's ordinary course of business. The Court agrees. As explained above, the creation of Dunhill and other corporate entities, and Debtor's manipulation of those entities (including but not limited to the "Management Agreement") constituted a serious breach of Debtor's fiduciary duties to his creditors. See Kremen v. Harford Mutual Insurance Co., 958 F.2d 602, 605 (4th Cir.1992). Even when viewed in the light most favorable to the Defendants, the fact that Debtor used the accounts of one of these sham entities to pay his lawyers is surely not what the Code drafters envisioned to be "in the ordinary course of business."

C. Statute of Limitations

■ An action to recover a post-petition transfer must be commenced within two years after the date of the transfer sought to be avoided. 11 U.S.C. § 549(d). Plaintiff seeks recovery of transfers that were made between June 26, 1996, and Febru-

---

7. It is undisputed that neither Debtor nor Defendants received court authorization for the money transfers at issue here.

ary 24, 1997. Mot. for Part. Summ. J. at 14. Plaintiff filed his Complaint on February 23, 1999. Not subject to the statute of limitations, then, are two payments of $50,000 each, made to Defendants on February 24, 1997.

Under certain circumstances, the statute of limitations will be subject to equitable tolling, which "allows a claim to be filed outside of the applicable statute of limitations where some action on the defendant's part makes it such that the plaintiff is unaware the cause of action exists." *In re Everfresh Beverages, Inc.*, 238 B.R. 558, 576 (Bankr.S.D.N.Y.1999). In this case, Plaintiff was appointed as trustee more than six months after the June, 1996 transfer, and he immediately took steps to protect the bankruptcy estate by successfully bringing suit for a preliminary injunction. *Compare, In re 31–33 Corp.* at 748 (tolling denied because trustee was appointed "well within" the limitations period, and did "virtually nothing" until prodded by the court).

Conduct that has been deemed sufficient to equitably toll the statute of limitations in section 549 cases includes the failure to file required statements under Rule 2016 [8] regarding the receipt of fees for professional services. *See, In re Bennett,* 133 B.R. 374, 381 (Bankr.N.D.Tex.1991). *See also, In re Bell,* 212 B.R. 654, 658 (Bankr. E.D.Ca.1997). Defendant law firms did not file these statements. Although Defendants argue that they had no duty under Rule 2016 because they represented Dunhill, not Debtor (who was Dunhill's

sole director and officer, and effectively its sole shareholder), the Court has found that Dunhill was Debtor's alter ego, rendering meaningless the distinction offered by Defendants.[9] In fact, the Court finds that the very use of Dunhill accounts to pay Debtor's legal bills amounted to the kind of concealment by defendants that calls for tolling the statute of limitations. *See Consolidated Partners Investment Co. v. Lake,* 152 B.R. 485, 492 (Bankr.N.D.Ohio 1993), *and cases cited therein.*

## IV. CONCLUSION

For the above stated reasons, the Court finds that the Plaintiff is entitled to partial summary judgment as to Count 2, but not as to Counts 1 and 3.

---

**8.** Rule 2016 requires Debtor's counsel to file a statement of compensation within 15 days of date payment made. *In re Bell,* 212 B.R. 654, 658 (Bankr.E.D.Ca.1997). These disclosure requirements are mandatory, not permissive. Fed. R. Bankr.2016(b).

**9.** The evidence suggests that Defendants knew perfectly well that they actually represented Debtor Bohrer, and not the corporate entities.

Upon issuing the 1997 preliminary injunction, the Bankruptcy Court observed that "[t]here is no question that Mr. Bohrer is the real party in interest and indeed at one point during the course of the hearing, counsel objected to a certain communication Mr. Bohrer is said to have made with counsel on the grounds of privilege, forgetting for a minute whom they ostensibly represented." Transcript of April 4, 1997 Hearing at 2–101.