# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 08-6047

_____

In re:                                          *
                                                *
Terri Kae Krivohlavek,                          *
                                                *
        Debtor.                                 *
                                                *
Terri Kae Krivohlavek,                          *
                                                *   Appeal from the United States
        Debtor - Appellant,                     *   Bankruptcy Court for the District of
                                                *   Nebraska
        v.                                      *
                                                *
Boys Town Federal Credit Union,                 *
                                                *
        Creditor - Appellee.                    *

_____

Submitted: April 29, 2009
Filed: May 22, 2009

_____

Before KRESSEL, Chief Judge, SCHERMER, and VENTERS, Bankruptcy
Judges.

_____

VENTERS, Bankruptcy Judge.

This is an appeal of the bankruptcy court's order denying the Debtor's motion
for turnover and for sanctions against creditor Boys Town Federal Credit Union for
alleged violations of the automatic stay. For the reasons set forth below, the
bankruptcy court's order is reversed and this case is remanded to the bankruptcy court

for the determination and imposition of appropriate sanctions against the Credit Union.

## I.  STANDARD OF REVIEW

A bankruptcy court's decision to impose or, in this case, deny, sanctions is reviewed for a clear abuse of discretion.[1]  "An abuse of discretion occurs if the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[2]

## II.  BACKGROUND

The Debtor, Terri Kae Krivohlavek, filed her Chapter 7 bankruptcy petition on June 26, 2007.  The Statement of Intentions filed with her petition stated that she intended to surrender a 2002 Ford Windstar ("Vehicle"), which was collateral for a loan ("Loan") owed to Boys Town Federal Credit Union.

Prior to the petition date, the Debtor had paid the Loan by way of an automatic payroll deduction through her employment at Boys Town Research Hospital.  The precise mechanics by which this was accomplished are critical to the resolution of this appeal.  Twice a month, Boys Town Research Hospital deducted $267.98 from her paycheck and deposited that amount into the Debtor's savings account at the Credit Union.  The Credit Union then transferred, applied, or directed $187.98 of the $267.98 toward payment of the Loan.[3]

---

[1] *American Residential Mortgage, LP v. Thayer* (*In re Thayer*), 384 B.R. 546, 550 (B.A.P. 8th Cir. 2008).

[2] *PW  Enter., Inc. v. Kaler* (*In re Racing Servs., Inc.*), 332 B.R. 581, 584 (B.A.P. 8th Cir. 2005).

[3] Of the remainder, $30 went into a "Christmas" account and $50 remained in the savings account (or was directed to a different savings account – the evidence on this point was unclear).

The Debtor alleges that, in addition to notifying the Credit Union of her bankruptcy filing through the creditor matrix, she notified the Credit Union shortly after the petition date by phone and in writing that she wanted the automatic deductions to stop and that she was surrendering the Vehicle. The Credit Union maintains that it did not have the ability to stop the automatic payment of her loan and that the only way to do so was for the Debtor to obtain a form from her employer, sign it, and then submit it to the Credit Union.

The bankruptcy court did not make any findings as to whether the Debtor actually notified the Credit Union that she had surrendered the Vehicle or that she wanted the automatic payroll deductions to stop. However, the Debtor eventually submitted the proper form on September 18, and the last automatic payroll deduction occurred on October 5, 2007. In total, after the petition date $1,875.86 was deducted from Debtor's paycheck and deposited in the Debtor's savings account. Of that amount, $1,315.86 was applied to the Loan.[4]

The Debtor received her discharge and the case was closed on October 5, 2007. On June 25, 2008, the Debtor requested that the case be reopened for the purpose of filing the underlying motion for turnover and for sanctions. The bankruptcy court reopened the case on August 18, 2008, and held a hearing on the Debtor's motion for turnover and for sanctions on October 10, 2008. The bankruptcy court entered an order denying the Debtor's motion on October 22, 2008, and the Debtor timely appealed.

---

[4] The Debtor's motion for turnover and sanctions sought turnover of only $1,127, representing six post-petition automatic payments, but the record indicates that seven post-petition payments were made.

## III.  DISCUSSION

The bankruptcy court denied the Debtor's motion for turnover and sanctions based primarily on its finding that the Debtor – not the Credit Union – had the sole ability to stop the "automatic" payments on the Debtor's Loan.  Therefore, the bankruptcy court concluded, the Credit Union's continued acceptance of those payments did not constitute a violation of the automatic stay.[5]  The bankruptcy court further held that the Credit Union was justified in accepting those payments because the Debtor's continued possession of the Vehicle combined with her failure to stop the automatic payments gave the "clear" impression that she intended to retain the Vehicle notwithstanding her stated intent to surrender it.[6]

As noted above, the resolution of this appeal turns on the details of the process by which the Credit Union received payments on the Loan.  Whether the Credit Union believed, as the bankruptcy court noted it was proper to do, that the Debtor had not actually surrendered the Vehicle might speak to the degree of culpability for the Credit Union's alleged violation of the automatic stay, that belief has no bearing on whether the Credit Union's conduct in receiving the automatic payments and applying the payments to the Debtor's loan constituted an act to collect a debt prohibited by 11 U.S.C. § 362(a).

The Credit Union contends that the automatic payment process was, essentially, a one-step transaction; the automatic deductions from the Debtor's paycheck were applied directly to the Loan at the Credit Union, and the ability to cease those payments rested solely with the Debtor.  Therefore, it argues, the Credit Union did not

_____

[5] The bankruptcy court did not explicitly hold that the Credit Union did not violate the automatic stay, but that holding is implicit in the court's denial of the Debtor's motion.

[6] The Credit Union never took any action to recover the Vehicle despite the termination of the automatic stay pursuant to 11 U.S.C. § 362(h).  The debtor finally delivered the Vehicle to the Credit Union in December 2007.

violate the automatic stay because it did not take any affirmative act to collect a debt from the Debtor; it merely received what it believed were voluntary payments on a loan.

The Debtor, on the other hand, argues that the automatic deduction/payment transaction was a two-step process, whereby the funds automatically deducted by the Debtor's employer from her paycheck were first deposited into her savings account at the Credit Union and were then applied by the Credit Union to the payment of the Loan. Characterized this way, the Debtor contends, each time the Credit Union "applied" the funds to payment of the Loan constituted an affirmative act taken to collect a debt in violation of 11 U.S.C. § 362(a). The Debtor might have had the sole ability to stop the automatic deductions from her paycheck, but the Credit Union always retained the ability to stop the application of the funds that were deposited in the Debtor's account.

While great deference is generally accorded to the factual findings of the bankruptcy court, we are of the firm conviction that the bankruptcy court erred in its finding that the Credit Union did not have the ability to stop the "automatic" application of the payments from the Debtor's employer to the Loan.

The most persuasive evidence of this is the uncontroverted fact that the regular payroll deductions were in a greater amount than the Loan payments. Specifically, the Debtor's employer deducted $267.98 twice a month and deposited that amount in the Debtor's savings account, but the Loan payments were only $187.98. If the process was truly a "one-step" process, as counsel for the Credit Union insisted at oral argument, then the payments on the Loan would have been in the same amount. But they weren't. Consequently, we are left with the inescapable conclusion that there was another step in the process – namely, the application of a portion of the funds deposited into the Debtor's account toward payment of the loan. And the Credit

5

Union – not the Debtor or the Debtor's employer – had control of that step of the process.

This characterization of the automatic deduction/payment transaction as a two-step process is consistent with the affidavit of Kathy Real, the Assistant Manager of the Credit Union, wherein Ms. Real stated, "At all times from and after March 21, 2006, Debtor had a savings account at the Credit Union, Account No. 5453004. The monies in the Debtor's savings account *included* the payroll deductions that Debtor used to pay the loan . . . ."[7] If the savings account "included" the loan payments, then the Credit Union must have taken an additional, affirmative act to separate those payments from the other funds in the account to make a payment on the Loan – which is exactly how the Credit Union's counsel described the process to the bankruptcy court: "She (the Debtor) had a savings account at the credit union that these automatic deductions or the payroll deductions went into *and then* the payments came out of there."[8]

Section 362(a)(6) prohibits a creditor from taking "any act to collect, assess, or recover" a pre-petition debt, and § 362(a)(3) prohibits "any act to obtain possession...or to exercise control over property of the estate." The Credit Union's application of a portion of the funds automatically deposited into the Debtor's savings account falls within the broad sweep these prohibitions.

Several courts have held that a creditor's mere receipt of an automatic payment constitutes an act to collect a debt prohibited by § 362(a)(2).[9] And notably, one of

---

[7] Appellant's App. at 55 (emphasis added).

[8] Transcript of October 10, 2007 hearing at 14 (emphasis added).

[9] *See e.g., O'Neal v. Beneficial of Tennessee, Inc.*(*In re O'Neal*), 165 B.R. 859, 863 (Bankr. M.D. Tenn. 1994) ("Transactions in which a creditor receives a post-petition automatic loan payment to pay a pre-petition debt are analogous to

these cases – *In re Shepherd*[10] – involved the imposition of sanctions against a credit union for its application of funds automatically deposited into a debtor's account at the credit union – a fact pattern strikingly similar to the facts of this case, although the court in *Shepherd* did not discuss the precise mechanics of the entire transaction.

For purposes of this appeal, we do not need to determine whether a creditor's mere receipt of an automatic payment constitutes a violation of the stay because here the Credit Union took an affirmative step beyond the mere receipt of an automatic payment – it applied a portion of the funds automatically deposited into the Debtor's account toward payment of a debt. And that affirmative step constitutes an act to collect a debt prohibited by § 362(a)(6).

## IV. CONCLUSION

For the reasons stated above, the bankruptcy court's order is reversed and this case is remanded to the bankruptcy court for the entry of an order requiring the Credit Union to turn over $1,127.00 – the amount the Debtor contends the Credit Union collected from the Debtor in violation of the automatic stay – and for a determination of the appropriate sanctions, which, at a minimum, should include the attorneys' fees incurred by the Debtor in pursuing the underlying motion and this appeal.

---

transactions in which a creditor continues, post-petition, to receive pre-petition garnishments of a debtor's wages. [Therefore,] the post-petition receipt of a pre-petition automatic loan payment also should be considered an 'act to collect' that violates the stay."); *In re Shepherd*, 12 B.R. 151, 153 (E.D. Penn. 1981).

[10] *In re Shepherd*, 12 B.R. at 153.